## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JORGE GOMEZ** | * | **NO. 19-11803** |
| | * | |
| **VERSUS** | * | **SECTION: "M" (1)** |
| | * | |
| **THE CITY OF NEW ORLEANS,** | * | |
| **JOHN GALMAN, and SPENCER** | * | |
| **SUTTON** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, the City of New Orleans ("the City"), respectfully submits this memorandum in support of its Motion to Dismiss for failure to state a claim under Rule 12(b)(6).

### INTRODUCTION

This suit arises out of abhorrent actions taken by two probationary New Orleans Police Department ("NOPD") officers while they were off-duty at a bar. The NOPD swiftly investigated John Galman and Spencer Sutton ("Galman" and "Sutton"), who were charged with the battery of plaintiff Jorge Gomez ("Plaintiff"), and terminated them from the department the following day.

The City brings the present motion because Plaintiff's complaint lacks the necessary factual support required to sustain his § 1983 claim and related state law claims against the City. Plaintiff simply recites the elements of his causes of action along with conclusory statements, and fails to state why the City has liability under § 1983, why the City is vicariously liable for the intentional torts of off-duty officers acting for their own personal motivations and not in performance of their employment duties, how the City negligently hired and negligently supervised and retained Galman and Sutton, or how the City can be liable for Galman and Sutton's alleged intentional infliction of emotional distress. That is because he cannot – Galman and Sutton were not acting pursuant to any official policy or widespread custom, were off-duty and completely

1

outside the course and scope of their employment as NOPD officers, and intentionally acted for purely personal motivations unconnected to their employment.  Accordingly, any amendment by Plaintiff would be futile, and all of Plaintiff's claims against the City should be dismissed.

## FACTUAL BACKGROUND

The following facts are presented as alleged in Plaintiff's Complaint, and accepted as true for purposes of this Motion to Dismiss.  On the evening of July 23, 2018, and into the early morning of July 24, 2018, Plaintiff was at a bar called the Mid-City Yacht Club.  (Rec. doc. 1, intro., ¶9.) Plaintiff, a United States military veteran of Honduran descent, was wearing fatigues and a Honduran green beret hat.  (*Id.* at intro., ¶10.)  Plaintiff claims that Galman and Sutton approached him in the bar, accosted him about his ethnicity and military service, and stole his hat off his head and left the bar.  (*Id.* at ¶¶7, 11-15.)

Plaintiff alleges that when he attempted to get his hat back, Galman and Sutton hurled racist and nativist comments at him, and began to physically attack him.  (*Id.* at ¶16.)  Two passers-by intervened, and Plaintiff got into his vehicle to leave, but Plaintiff claims that Galman and Sutton blocked his car, ordered him out, and used "excessive force" against him until he lost consciousness.  (*Id.* at ¶¶17-20.)  Though Plaintiff alleges that Galman and Sutton were NOPD officers (*id.* at ¶7), he does not allege that they were dressed in NOPD uniforms or that they at any point identified themselves to him or to any witnesses as NOPD officers.

Plaintiff alleges that after he lost consciousness, Galman and Sutton called into dispatch and attempted to cover up their actions by initiating a criminal investigation against Plaintiff.  (*Id.* at ¶¶21-25.)  Galman and Sutton then allegedly left the scene, and Plaintiff claims that investigators went to the hospital to conduct an "interrogation" of him, allegedly treating Galman and Sutton more favorably than Plaintiff.  (*Id.* at ¶¶25-27.)  However, on the same day as the incident at issue,

Galman and Sutton were arrested (*id.* at ¶35), and NOPD announced termination proceedings, to be effective the next day, July 25, 2018.[1]  Plaintiff also claims that NOPD had flawed hiring practices and failed to adequately train and supervise its officers, which resulted in a "Blue Code of Silence" after this incident.  (Rec. doc. 1, ¶34.)  Plaintiff is alleged to have incurred extensive physical injuries, and claims severe mental and emotional distress.  (*Id.* at ¶¶38-41.)

Plaintiff alleges eight separate causes of action:

    (1) 42 U.S.C. § 1983 violations against the City for unconstitutional policies, customs, usages, practices, and procedures;

    (2) 42 U.S.C. § 1983 violations against the defendant officers for unlawful stop, detention, arrest, and excessive and unreasonable force;

    (3) Assault, battery, and false arrest and against the defendant officers;

    (4) Intentional infliction of emotional distress against all defendants;

    (5) Negligent hiring against the City;

    (6) Negligent retention and supervision against the City;

    (7) Vicarious liability, *respondeat superior*, ostensible agency, and/or agency against the City; and,

    (8) Violation of the Public Records Law against the City.

*Id.* at ¶¶42-97.

## LAW AND ARGUMENT

## I.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

---

[1]   Though only facts alleged in the Complaint should be considered for a Motion to Dismiss, the Court can take judicial notice of matters of public record.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 782-83 (5th Cir. 2011).  On July 24, 2018, later in the day of the incident, the NOPD released a statement through its website, which read in part: "The NOPD has arrested two officers and begun termination proceedings after the Public Integrity Bureau investigated their involvement in an off-duty incident where the officers committed battery on a male victim near the 400 block of South St. Patrick Street. The two officers involved in the incident are John Galman and Spencer Sutton. Both have been arrested and charged with simple battery. PIB investigators are continuing their investigation to determine whether more serious charges are warranted. As a result of their arrest, the Superintendent has initiated termination proceedings effective Wednesday, July 25, 2018." *See* July 24, 2018 NOPDNews Announcement, https://nopdnews.com/post/july-2018/nopd-arrests-two-officers-for-assault,-begins-term/.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and allegations of a conclusory nature will not be given the presumption of truth. *Id.* at 678, 681 (citing *Twombly*, 550 U.S. at 555). For a complaint to be legally sufficient, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and even well-pleaded facts must allow the court to "infer more than the mere possibility of misconduct." *Id.* at 679 (citing Fed. R. Civ. Proc. 8(a)(2)).

## II.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THE CITY UPON WHICH RELIEF CAN BE GRANTED

Plaintiff brings the following claims against the City: (1) a § 1983 claim for alleged unconstitutional policies or customs (rec. doc. 1, ¶¶42-51); (2) vicarious liability for the actions of the off-duty defendant officers, against whom plaintiff alleged claims of assault, battery, false arrest, intentional infliction of emotional distress (*id.* at ¶¶57-70, 82-86); (3) negligent hiring and negligent retention and supervision (*id.* at ¶¶71-81); (4) intentional infliction of emotional distress (*id.* at ¶¶64-70); and, (5) violation of the state's public records law (*id.* at ¶¶87-97). Plaintiff has failed to allege facts sufficient to state these claims against the City.

### A.   Plaintiff Fails to Allege Facts That Would Allow for § 1983 Municipal Liability.

Plaintiff alleges that the City violated his constitutional rights by establishing and maintaining unspecified policies, procedures, practices, customs, and usages that it knew would deprive the public and Plaintiff of their constitutional rights, and that the City knew its policies and procedures would result in constitutional violations but ignored that risk and acted with deliberate indifference. (*Id.* at ¶¶47-49.) These conclusory allegations fail to meet the standard

4

required to hold a municipality such as the City liable for alleged constitutional violations pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Under *Monell*, a government entity cannot be held liable under § 1983 pursuant to a theory of *respondeat superior*; rather, it can only be responsible when "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Id.* at 691, 694. Therefore, to establish municipal liability under § 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Plaintiff here has failed to allege any facts that satisfy the elements necessary to sustain a cognizable *Monell* claim.

1. **Plaintiff Fails to Describe Any Policy or Custom Linked to His Alleged Constitutional Rights Violations.**

The requirement of an "official policy" to state a *Monell* claim "includes decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621-22 (5th Cir. 2018) (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Moreover, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cnty.*, 981 F. 2d 237, 245 (5th Cir. 1993). An official policy "is ordinarily contained in duly promulgated policy statements, ordinances or regulations," *Piotrowski*, 237 F.3d at 579. "The official policy itself must be unconstitutional, or if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)

(quoting *Johnson v. Deep E. Tex. Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).  For an unofficial custom or practice to represent official policy, it must be "so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (2007) (citing *Monell*, 436 U.S. at 690-91).  Additionally, the policy or custom must be "the moving force behind the constitutional violation," and courts must "adhere to rigorous requirements of culpability and causation," lest "municipal liability collapse[] into respondeat superior liability." *James*, 577 F.3d at 647-18 (citing *Piotrowski*, 237 F.3d at 580*; Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

Whether alleging the existence of an unconstitutional official policy or widespread custom, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F. 3d 162, 167 (5th Cir. 1997)); *see also Bookenberger v. Terrebonne Parish*, No. 18-6373, 2019 WL 3858949, *4-5 (E.D. La. Aug. 16, 2019) (granting motion to dismiss where plaintiff failed to "assert plausible claims directly associated with policies, regulations, and decisions officially adopted and promulgated" by the parish and police department, and made "no allegations that [defendants] were acting pursuant to an official municipal policy and as official municipal policymakers").

In *Peña*, for example, the Fifth Circuit determined that the plaintiff's complaint identified "just two 'specific facts,' and neither plausibly suggest[ed] that the city has a policy of tasing non-suspect minors." 879 F.3d at 622. One policy mentioned in the complaint was "causally irrelevant," so it could not demonstrate a persistent practice, and the only other fact was the single incident in which the plaintiff was involved. *Id.* Because a plaintiff "must do more than describe

the incident that gave rise to his injury" to plead a widespread practice, conclusory allegations "utterly devoid of 'factual enhancements'" will not satisfy *Monell*. *Id.* (citing *Connick*, 563 U.S. at 61; *Iqbal*, 556 U.S. at 678); *see also Spiller*, 130 F.3d at 167 (granting motion to dismiss where plaintiff failed to allege the departmental policies that led to misconduct and instead "merely assert[ed] that the policies "led to unspecified unconstitutional arrests and confinements," as well as other "vague and conclusory" contentions); *Duffour v. Guillot*, No. 11-1766, 2013 WL 5673605, *6 (E.D. La. Oct. 17, 2013) ("Duffour's *Monell* claims fails as a matter of law because Duffour has alleged no facts to support the legal conclusion that a policy or custom was the moving force behind any constitutional harm . . . At most, Duffour alleges intentional, isolated, after-hours conduct by Guilliot, which is insufficient to state a *Monell* claim.").

Plaintiff here similarly alleges no specific facts regarding any official policy or widespread custom that led to his constitutional deprivation, and instead provides conclusory allegations devoid of factual enhancements. Plaintiff first claims that the City violated his rights "to be on a public street, to be left alone, to locomotion, to travel, to due process of law, to equal protection of the law, to freedom from unreasonable search and seizures, to freedom from excessive force, and to freedom from cruel and unusual punishment under the First, Fourth, Eighth, and Fourteenth Amendments." (Rec. doc. 1, ¶43). He then provides a single conclusory allegation of unspecified "policies, customs, usages, practices, and procedures that [the City] knew would deprive members of the public, including Jorge Gomez, of their constitutional rights protected under the First, Fourth, Eighth, and Fourteenth Amendments." (Rec. doc. 1, ¶¶42-51.) This complete failure to name or specify any policy or custom of the City or NOPD, or how that policy or custom is linked

to plaintiff's underlying alleged constitutional violations, means Plaintiff's *Monell* claim against the City must fail.[2]

### 2. Plaintiff Fails to Allege That an Official Policy Was Promulgated by the City's Policymaker or That the City's Policymaker Had Actual or Constructive Knowledge of an Unwritten Custom.

Plaintiff also fails to allege any policy promulgated or known by a policymaker. The Fifth Circuit has held that in order to survive at the pleading stage, a complaint containing a *Monell* claim must allege facts that establish that an official policy was promulgated or ratified by the city's policymaker. *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284-85 (5th Cir. 2016). Moreover, "[a] city cannot be liable for an unwritten custom unless actual or constructive knowledge of such custom is attributable to a city policymaker." *Peña*, 879 F.3d at 623 (internal quotations omitted).

In *Groden*, the Fifth Circuit concluded that a plaintiff met the pleading requirement of showing that a policymaker ratified an official policy when he alleged that the city publically announced a merchandise crackdown policy and a city spokesperson gave media interviews describing the policy. 826 F.3d at 286. By contrast, in *Peña*, the Fifth Circuit found the policymaker element unsatisfied when a plaintiff's complaint "invite[d] no more than speculation that any particular policymaker, be it the chief of police or the city commission, knew about the alleged custom" of tasing non-threatening non-suspects. 879 F.3d at 623. Given the plaintiff's

---

[2]  It is unclear whether the paragraphs in Plaintiff's Complaint that discuss the Consent Decree Independent Monitor's 2017 findings with regard to hiring practices (rec. doc. 1, ¶¶30-33) are intended to be allegations of unconstitutional policies. If they are, they do not meet the requirements of the *Monell* claim for several reasons, including that there are no allegations that the Monitor's findings reflect unconstitutional policies or practices, or that there is a causal connection between general alleged insufficient hiring practices and the actions taken by Galman and Sutton that night. And the actions taken by Galman and Sutton, who were off-duty and clearly acting out of personal motivation, had no relation to their status as hired police officers (*see* discussion *infra* at part II.C), so there are also no allegations to support that their actions were constitutional violations. *E.g.*, *Duffour*, No. 11-1766, 2013 WL 5673605 at *6 ("At most, Duffour alleges intentional, isolated, after-hours conduct by Guilliot, which is insufficient to state a *Monell* claim.").

"utter failure to allege facts connecting this floating custom to any particular policymaker," she could not demonstrate any actual or constructive knowledge of the custom. *Id.* at 623 & n.13.

Like in *Peña*, Plaintiff here does not meet the required pleading standard to satisfy the policymaker element of a *Monell* claim against the City.  Plaintiff's Complaint vaguely states that "Defendant City's final policy makers, in their individual capacities, acting individually and together, acted to violate Mr. Gomez's rights by establishing and maintaining policies, customs, usages, practices, and procedures that they knew would" deprive Plaintiff and the public of constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments. (Rec. doc. 1, ¶47.)   Plaintiff must at least allege facts establishing that a policymaker ratified a policy or had actual or constructive knowledge of a custom.  *Peña*, 879 F.3d at 623 (citing *Groden*, 826 F.3d at 84-86).  His barebones and conclusory allegation that some unnamed policies and customs were somehow established by the City's final policymakers is similar to the *Peña* plaintiff's "utter failure to allege facts connecting [a policy or custom] to any particular policymaker," and his claim likewise fails.  *Id.* at 623 & n.13.

### 3.   Plaintiff Fails to Allege Facts to Support a Failure to Train Claim.

Plaintiff's Complaint devotes a few paragraphs to an allegation of a failure to train (rec. doc. 1, ¶¶44-46), but Plaintiff also fails to allege facts to support such a claim under § 1983. Specifically, to state a claim for municipal liability under § 1983 for a failure to train, a plaintiff must provide that "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."  *Peña*, 879 F.3d at 623 (quoting *Thompson v. Upshur City*, 245 F.3d 447, 459 (5th Cir. 2001)).  In *Peña*, the complaint identified "multiple alleged inadequacies"

9

in the department's taser training program, including the use of uncertified tasers, and failure to train on the legal use of force and non-lethal weapons. *Id.* The Fifth Circuit ultimately concluded that the plaintiff did not show that the failure to train constituted deliberate indifference, because she only alleged one incident and did not allege a complete failure to train in taser usage, which could potentially constitute deliberate indifference. *Id.* at 623-24.

Here, Plaintiff alleges no type of training that the City allegedly failed to provide that would have prevented his harm, nor does he allege a causal connection to his alleged violation of rights. Instead, Plaintiff broadly asserts that "Defendant City failed to train and supervise its subordinates, namely [Galman and Sutton], to ensure these subordinates did not violate members of the public's rights protected under the First, Fourth, Eighth, and Fourteenth Amendments," and that the failure to do so was "deliberate indifference and disregard" for plaintiff's constitutional rights. (Rec. doc. 1, ¶¶44, 46.) Again, Plaintiff has provided only conclusory statements, without any supporting facts. This threadbare recital of the elements of a cause of action, without any sort of factual enhancement, cannot support plaintiff's claim, which should be accordingly dismissed. *See, e.g.*, *Sherman v. Irwin*, No. 17-4061, 2018 WL 3632360, *7 (E.D. La. July 31, 2018) ("That kind of deliberate, illegal, and deplorable behavior [committed by officer] is almost assuredly the result of the officer's severe personal shortcomings and not the result from a failure to train. In any case, this failure to train claim is without sufficient particularity."); *Duffour*, No. 11-1766, 2013 WL 5673605 at *6 ("Nor does Duffour allege any facts to support a failure-to-train theory of liability. At most, Duffour alleges intentional, isolated, after-hours conduct by Guilliot, which is insufficient to state a *Monell* claim."). Plaintiff has no cognizable § 1983 claim against the City.[3]

---

[3] To the extent Plaintiff is seeking punitive damages from the City, it is well-established that municipalities are exempt from punitive damages in § 1983 cases. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259 (1981). Plaintiff's request for punitive damages from the City should be dismissed, as he is not entitled to such damages.

**B. The Court Should Decline to Exercise Supplemental Jurisdiction Over Any Remaining State Law Claims.**

Having established above that the City is entitled to a judgment dismissing all of Plaintiff's claims against it under § 1983, this Court should decline to exercise supplemental jurisdiction over any remaining state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." This Court should do so here. *See, e.g.*, *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th Cir. 1992); *James v. Chutz*, 62 F.3d 394 (5th Cir. 1995); *Stone v. La. Dep't of Revenue*, 996 F. Supp. 2d 490, 514 (E.D. La. 2014), *aff'd in part, rev'd in part*, 590 F. App'x 332 (5th Cir. 2014); *Cook v. Lamont*, 537 F. App'x 568, 569 (5th Cir. 2013); *Bookenberger*, No. 18-6373, 2019 WL 3858949 at *9; *Kennedy v. Sparacello*, No. 93-1176, 1996 WL 648824, *2 (E.D. La. Nov. 1, 1996).

**C. The City Cannot Be Vicariously Liable for the Intentional Tortious Acts of the Galman and Sutton.**

Should this Court opt to retain jurisdiction over Plaintiff's state law claims, however, it should dismiss them for Plaintiff's failure to adequately plead them. With regard to Plaintiff's claim of vicarious liability, Louisiana Civil Code article 2320 provides that an employer is liable for tortious acts of its employees "in the exercise of the functions in which they are employed." This doctrine of *respondeat superior*, or vicarious liability, therefore "will attach . . . only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Baumeister v. Plunkett*, 673 So. 3d 994, 996 (La. 1996).

Specifically, the Louisiana Supreme Court has stated that the following factors should be considered when determining if an employer has vicarious liability for an intentional tort:

(1) Whether the tortious act was primarily employment rooted;
(2) Whether the violence was reasonably incidental to the performance of the

employee's duties;

(3) Whether the act occurred on the employer's premises; and

(4) Whether it occurred during the hours of employment.

*Id.* Ultimately, the "focus of the inquiry is determining 'whether the employee's tortious conduct was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business,' as compared to 'conduct motivated by purely personal considerations entirely extraneous to the employer's interests.'" *Smith v. Carruth*, No. 15-4570, 2017 WL 785345, *11 (E.D. La. Mar. 1, 2017) (quoting *Smith v. Lafayette Parish Sheriff's Dep't*, 874 So. 2d 863, 866 (La. App. 3 Cir. 2004)).

In *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 817 (La. 2000), for example, the Louisiana Supreme Court determined that an employer was not liable for the off-duty tortious conduct of a police officer involved in a fight outside of a bar after drinking. The off-duty officer was not in uniform when his friend started attacking a man, but later displayed a badge to bystanders in order to allow his friend to continue attacking the man and the bar owner, and the off-duty officer himself later kicked the bar owner. *Id.* at 817. Even though the off-duty officer identified himself as an officer at the scene, the Louisiana Supreme Court concluded that his actions were for personal motives and were outside the course and scope of his employment. *Id.* Likewise, in *Russell v. Noullet*, 721 So. 2d 868, 870-71 (La. 1998), the Louisiana Supreme Court determined there was no vicarious liability after an off-duty New Orleans Police Officer assaulted a bystander and shot into a crowd during a fight at a social gathering. The tortious assault was "clearly . . . not in any manner employment-related," and "clearly was motivated by Officer Noullet's purely personal considerations, entirely extraneous to the City's interests in keeping the peace." *Id.* at 872.

In *Smith*, however, the Eastern District determined a police department could potentially be vicariously liable for an officer who identified himself as an officer, displayed his badge, placed a woman under arrest, handcuffed her, read her rights, and threatened jail and charges, and then kidnapped and raped her.  No. 15-4570, 2017 WL 785345 at *13.  Though the officer did not use his police power in attacking the woman, there was a genuine dispute of material fact over whether the officer abused his apparent authority as a police officer in order to kidnap and rape her.  *Id.*

Here, there are no allegations that Galman and Sutton acted out of anything other than purely personal considerations, nor are there any allegations that they acted in the NOPD or City's interests or with any apparent authority as police officers with respect to Plaintiff.  Plaintiff alleges that "the conduct complained of [was] in the course and scope of their employment, and under color of law," but no facts in his complaint support this conclusory allegation.  (Rec. doc. 1, ¶7). For example, nowhere does Plaintiff state that Galman and Sutton were on duty, were in uniform, or identified themselves to Plaintiff or to any bystanders as police officers.  In fact, Plaintiff's allegations support that Galman and Sutton were acting completely unrelated to the NOPD and City's interests.  For example, Plaintiff alleges that Galman and Sutton began to make fun of him at the bar, bullied him about his ethnicity, heritage, and military service, called him a "fake American," stole his military beret, and attacked him when he tried to leave the bar.  (Rec. doc. 1, ¶¶11-20.)  Clearly, these actions cannot be considered related to the NOPD and City's interests. Considering the facts as alleged by Plaintiff, the actions of Galman and Sutton occurred when they were off duty, were not employment rooted, were not incidental to the performance of their duties as NOPD officers, and were purely personally motivated.[4]  Accordingly, Plaintiff has failed to state a claim for vicarious liability against the City, and such claims should be dismissed.

---

[4]  Plaintiff alleges that "Defendant Officers attempted to cover up their excessive force by initiating a criminal investigation against Mr. Gomez," (rec. doc. 1, ¶23), but provides no further allegations supporting such an

### D.  Plaintiff Fails to Allege Facts to Support Negligent Hiring or Negligent Retention and Supervision Claims.

Similar to the rest of Plaintiff's Complaint, his state law claims of negligent hiring and negligent retention and supervision against the City lack the requisite factual allegations to support his conclusory recitations of the elements of a claim, and if supplemental jurisdiction is exercised, they should be dismissed.  Plaintiff alleges that the City had a duty to investigate Galman and Sutton's backgrounds and breached this duty by failing to conduct adequate investigations.  (Rec. doc. 1, ¶¶72-73).  Plaintiff also alleges that it was unreasonable for the City to hire Galman and Sutton "in light of information that it knew or should have known about Defendant Officers' propensity for physical aggressive behavior and/or racist, nativist, or xenophobic conduct." (*Id.* at ¶74.)  Plaintiff does not provide any further factual support for these allegations – he does not state how the City failed to conduct an adequate investigation, or provide any further information about Galman and/or Sutton's alleged "propensity for physical aggressive behavior" and "racist conduct," let alone how the City should have known about this propensity.

Plaintiff's negligent retention claim similarly alleges that the City "knew or should have known" that Galman and Sutton "were unfit for their job and/or in all probability would act in a manner dangerous to the public," without providing any facts to support this conclusory statement. (*Id.* at ¶78.)  Plaintiff alleges that at the time of the incident, the NOPD's Public Integrity Bureau "had two separate internal investigations open on Defendant Galman from which he had received no discipline nor been stripped of his police powers despite being on probationary period," (*id.* at

---

investigation took place.  Plaintiff then alleges that Galman and Sutton left the scene (rec. doc. ¶¶24-25), so it is unclear how they launched an investigation.  If Galman and Sutton somehow did use their apparent authority as officers after the attack, it would be similar to the officer in *Brasseaux*, 752 So. 2d at 823, whose "sole motive for displaying the badge was simply to intercede long enough to flee from the scene," which was a "purely personal" motive outside the course and scope of his employment.  Moreover, Galman and Sutton were almost immediately investigated themselves, and were arrested and then terminated within 72 hours.  *See* n.1, *supra*.  And while Plaintiff claims he was later interrogated at the hospital (rec. doc. 1, ¶26), he offers no facts to support that he was somehow mistreated, rather than just interviewed.

14

¶28), but Plaintiff does not allege that these investigations were causally related to or indicative of a probability that he was unfit or would act in a dangerous manner.  And Plaintiff provides no factual allegations at all supporting negligent retention and supervision of defendant Sutton. Plaintiff's Complaint simply requires more factual support to survive a motion to dismiss.  *E.g.*, *Iqbal*, 556 U.S. at 679.

Though Plaintiff cites to a 2017 report submitted by the Independent Monitor in connection with the Consent Decree, which stated that there were "incomplete investigations" of NOPD candidates, this does not support Plaintiff's contention that there was some sort of indicator of violence and/or racism that NOPD should have uncovered about Galman and Sutton.  *See Barrios-Barrios v. Clipps*, 825 F. Supp. 2d 730, 751 (E.D. La. 2011).  Moreover, the Consent Decree specifically states that it is not intended to limit or expand the right of any person to seek relief against the City, NOPD, or any officer or employee thereof, nor does it alter legal standards governing any such claims by third parties.  *See USA v. City of New Orleans*, E.D. La., No. 12-1924, Rec. doc. 2-1, ¶11.

Furthermore, Plaintiff's allegations do not support a negligent hiring or retention claim because to make such a claim under Louisiana law, Plaintiff must show that Galman and Sutton were "engaged in furthering the employer's business – law enforcement – when [they] stepped beyond the line of duty," which Plaintiff  fails to do.  *Roberts v. Benoit*, 605 So. 2d 1032, 1037 (La. 1991) (internal quotations omitted).  Louisiana law also requires that there be causation between the allegedly negligent hiring and retention and the plaintiff's injuries, *e.g.*, *Bohmfalk v. City of New Orleans*, 628 So. 2d 1143, 1146-47 (La. App. 4th Cir. 1993), and as discussed in part II.C above, Plaintiff here does not allege that Galman and Sutton were acting as NOPD officers at the time of the attack or that they were in any way engaging in NOPD business.  Plaintiff's injuries

15

are simply in no way related to Galman and Sutton's status as NOPD officers.  *See Roberts*, 605 So. 2d 1045 (finding the ease of association between alleged negligence in hiring and the risk of injury under the circumstances the injury occurred "at best, attenuated").  Plaintiff lacks factual support for his negligent hiring and negligent retention and supervision claims against the City, and they should be dismissed.

### E.  Plaintiff Has Not Alleged the City Desired or Knew of the Intentional Infliction of Emotional Distress.

Finally, Plaintiff also lacks factual support for his intentional infliction of emotional distress claim against the City, to the extent this Court exercises supplemental jurisdiction to hear it.  For an employer to be liable for intentional infliction of emotional distress, the plaintiff must show that the employer "desired or knew that the harm facing the plaintiff as a result of the complained-of conduct was substantially certain to result from the conduct."  *Olmeda v. Cameron Int'l Corp.*, 139 F. Supp. 3d 816, 837 (E.D. La. 2015) (quoting *Bourgeois v. Curry*, 921 So. 2d 1001, 1010 (La App. 4 Cir. 12/14/05)).  If the employer did not know of the complained-of conduct, it cannot be held liable for intentional infliction of emotional distress.  *Bourgeois*, 921 So. 2d at 1010.  Plaintiff alleges that the City, along with Galman and Sutton, engaged in "willful, wanton, intentional, outrageous, malicious" conduct with the intent to cause emotional distress, and that all defendants, "in the aforementioned acts and/or ratifying such acts," consciously disregarded Plaintiff's welfare and safety.  (Rec. doc. 1, ¶¶64-70.)

The City here clearly did not know Galman and Sutton intended to commit the acts before they occurred.  Moreover, despite the conclusory allegation that the City "ratif[ied]" the acts, there is no accompanying factual support. In fact, Plaintiff admits that Galman and Sutton were investigated and arrested for their acts.  (*Id.* at 35).  And termination proceedings were started later

16

that day, to be effective the next day, July 25, 2018.  *See* n.1, *supra*.  Plaintiff fails to show the City can be liable for any intentional infliction of emotional distress.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiff has failed to state any cognizable § 1983, vicarious liability, state law negligent hiring and negligent retention and supervision, or state law intentional infliction of emotional distress claims against the City, and there is no indication that plaintiff will be able to correct deficiencies if given the ability to amend.  Additionally, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's state law claims. The City therefore respectfully requests that this Court dismiss all of Plaintiff's claims with prejudice, at Plaintiff's cost.

Respectfully submitted,

/s/ *Erica A. Therio*
**ERICA A. THERIO, LSB #34115**
ASSISTANT CITY ATTORNEY
**MEGAN A. HAYNES, LSB #37158**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSB #31330**
DEPUTY CITY ATTORNEY
**CHURITA J. HANSELL, LSB #25694**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSB #23338**
SR. CHIEF DEPUTY CITY ATTORNEY
**SUNNI J. LEBEOUF, LSB #28633**
CITY ATTORNEY
1300 PERDIDO ST., STE. 5E-03
NEW ORLEANS, LA 70112
TELEPHONE:  (504) 658-9800
FACSIMILE:  (504) 658-9868
*Attorneys for the City of New Orleans*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 17th day of September, 2019, the above and foregoing has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record, and by U.S. mail to all *pro se* parties.

*_/s/ Erica A. Therio_____*

18