**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| JORGE GOMEZ, | ) CIVIL ACTION NO: 19-cv-11803 |
| | ) |
| Plaintiff, | ) SECTION: "M" (1) |
| v. | ) |
| | ) JUDGE: BARRY W. ASHE |
| THE CITY OF NEW ORLEANS, JOHN | ) |
| GALMAN, and SPENCER SUTTON, | ) MAGISTRATE: JANIS VAN MEERVELD |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS

Plaintiff, Jorge Gomez, respectfully submits this memorandum in support of his Opposition to Defendant the City of New Orleans' Motion to Dismiss pursuant to Rule 12(b)(6).

## INTRODUCTION

On July 17, 2019, Plaintiff, Jorge Gomez ("Plaintiff" or "Gomez"), filed an eight-count complaint against Defendant, the City of New Orleans ("Defendant", "City" or "Defendant City"), and Defendant police officers John Galman and Spencer Sutton[1] (collectively, "Defendant Officers"). On September 17, 2019, Defendant City filed its Motion to Dismiss the Complaint (the "Motion") challenging Count I: 42 U.S.C. § 1983 Violations (Unconstitutional Polices, Customs, Usages, Policies, and Procedures); Count IV: Intentional Infliction of Emotional Distress; Count V: Negligent Hiring; Count VI: Negligent Retention and Supervision; and Count VII: Vicarious Liability. Defendant City did not present a challenge to Count VIII: Violation of Public Records Law.

In its Motion, Defendant substitutes conjecture and speculation as "facts," misapplies the law, misrepresents or ignores the facts laid out in the Complaint and raises issues only appropriate

---

[1] On October 17, 2019, Defendant Spencer Sutton filed his answer to the Complaint responding to both federal state claims against him.

as affirmative defenses. While Defendant seeks to avoid material factual allegations, such facts are fixed in the Complaint, and the court must accept those allegations as true. Defendant's Motion would have this Court rule on substantive issues that can only be determined by the trier of fact.

In summary, Defendant's Motion to Dismiss should be denied for a myriad reasons. First, with respect to Plaintiff's §1983 claims, Plaintiff plausibly alleged official policies and customs that were moving forces behind the Constitutional violations that led to Plaintiff's injuries, and a policymaker who had to have actual or constructive knowledge thereof. These policies and customs including the New Orleans Police Department's ("NOPD" or "Department") policy of protecting their officers in the face of misconduct, deficient hiring and supervising practices in order to effectuate an increased number of officers, and inadequate training. Second, Plaintiff pled sufficient facts to support his claim that Defendant City's negligence in its hiring practices allowed unqualified Defendant Officers to find positions with the NOPD and act with impunity that resulted in Plaintiff's severe beating at their hands. Its negligence in supervising, which was a known issue, and retaining Defendant Officers, including that Defendant John Galman had 2 prior internal investigations during his short probation period, also led to Plaintiff's injuries. With respect to intentional infliction of emotion distress, Plaintiff sufficiently alleged facts that due to the NOPD's failure to resolve numerous deficiencies set forth in the Consent Decree, Amended Consent Decree, and Independent Monitor report – published 2 months before Plaintiff's injuries, Defendant City knew its conduct would almost certainly result in severe emotional distress. Lastly, Plaintiff alleged sufficient facts to support his claim for vicarious liability in that at least one of the Defendant Officers acted within the course and scope of his duties when he came to the assistance of the other. For these reasons and as detailed below, Defendant's Motion should be summarily denied in its entirety.

## LAW AND ARGUMENT

### I.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  However, "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982) (quotation omitted).

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.,* 322 F.3d 883, 885 (5th Cir. 2003) (internal quotation omitted).  Moreover, "the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Baker v. Putnal,* 75 F.3d. 190, 196 (5th Cir.1996).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins,* 224 F.3d at 498. A court may, however,  rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see* Fed. R. Evid. 201.

The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  A complaint need only contain enough facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**II. PLAINTIFF PLAUSIBLY PLED FACTS TO STATE A CLAIM FOR §1983 MUNICIPAL LIABLITY (COUNT I)**

**A. THE COMPLAINT PROVIDES THAT THE CITY'S OFFICIAL POLICIES OR CUSTOMS OF PROTECTING ITS OFFICERS FROM THEIR OWN WRONDOING AND ITS FAILURE TO TRAIN, SUPERVISE, AND/OR DISCIPLINE ITS OFFICERS WERE THE MOVING FORCES BEHIND THE CONSTITUTIONAL VIOLATIONS THAT LED TO PLAINTIFF'S INJURIES**

As stated in the Complaint, Defendant City had an official policy or custom of both protecting its officers from their own wrongdoing, and hiring to ensure desired officer numbers. It also had an official policy or custom to improperly and insufficiently train and supervise its employees to maintain the desired number of officers on the force. The Complaint details specific facts to support Plaintiff's allegations that these policies were the moving forces behind the Constitutional violations that resulted in Plaintiff's injuries, *Balle v. Nueces Cty., Tex.,* 690 F. Appx. 847, 852 (5th Cir. 2017) (quoting *Spiller v. City of Tex. City, Police Dept.,* 130 F.3d 162, 167 (5th Cir. 1997) (holding that the pleadings are adequate with respect to a section 1983 claim against a city when they set forth, "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" for the constitutional violation asserted).

To succeed on a *Monell* claim against a local government entity, the plaintiff must allege (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *McGregory v. City of Jackson*, Miss, 335 F. Appx. 446, 448, 2009 WL 1833958, *2 (5th Cir. 2009), (citing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-49 (5th Cir. 2003)).

Initially, Defendant City argues Plaintiff failed to allege an "official policy or custom". This is not the case. An "official policy" may be established by alleging that where the policymaker has failed to affirmatively act, the need to take some action to control the agents of

4

the government is so obvious that the policymaker has been deliberately indifferent to the need. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Moreover, an unofficial custom can become "official policy" if "it is so widespread as to have the force of law." *See Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Here, Plaintiff plausibly pleaded Defendant City's widespread policy or custom of protecting its officers is an official policy or custom that was a moving force behind the Constitutional violations that caused Plaintiff's injuries. Specifically, the facts layout Defendant City's custom of protecting its New Orleans Police Department ) officers for their wrongdoing, whether by the NOPD's Blue Code of Silence or looking the other way, for example, by allowing its officers to leave the scene of a crime to hide incriminating evidence. (See Rec. doc. 1, ¶¶24-26, 34). Plaintiff also alleges Defendant Officers sought to avail themselves of the City's protection policy when they identified themselves as NOPD officers to responding officers because they knew by custom and policy that would protect them, and turn the spotlight on their victim, Plaintiff. (*Id.* at ¶25). In conformity with the City's protection policy, Plaintiff further alleged the responding NOPD officers took over from there, going almost immediately to the hospital to subject a severely beaten Mr. Gomez to a videotaped interrogation while they allowed Defendant Officers the chance to go home to shed their incriminating clothing after Defendant Officers identified themselves as NOPD officers. (Rec. Doc. 1, ¶¶23-26, 35). As if this was not enough, the NOPD interrogated Plaintiff a second time with videotape. Clearly, without such widespread protectionist policy, Defendant Officers would not have felt empowered to inflict the severe injuries they did on Plaintiff, Defendant Officers would not have called NOPD to back them up after committing the crime, and the responding NOPD officers would never have allowed these criminals to depart a crime scene to discard evidence of a crime. *See*, *e.g.*, *Riviera v. City of San Antonio*, 2006 WL 3340908 at *13, (W.D. Tex. November 15, 2006) ("When the facts

alleged are viewed in a light most favorable to the non-movant, it may be inferred that Defendant

Montes used excessive deadly force with the knowledge that no disciplinary action would be

taken against him by the Police Department. This is sufficient to allege that Defendant City of

San Antonio's policy was the "moving force" behind the violation."). This widespread practice

of protecting its own is known by the NOPD and will be ferreted out during discovery.

Further, the City's desire for greater numbers of police officers gave rise to an official

policy of allowing unqualified recruits to become police officers despite the obvious risk to public

safety of inadequately vetted recruits, a policy which even some NOPD officers found

questionable. (Rec. doc. 1, ¶32). In furtherance of this policy, the City performed inadequate

background checks, accepted unqualified recruits into the police academy, focused too heavily

on "automatic disqualifiers" at the expense of obvious issues, and accepted these less qualified

recruits in order to achieve those numbers. (*Id.* at ¶¶ 29-33). Had Defendant City not simply

been motivated by filling its officer ranks, despite the inherent and obvious risks to public safety,

and instead implemented adequate hiring practices, neither Defendant Officers would have been

hired, they would not have felt they were cloaked in the impunity offered by the protectionism of

the NOPD, and they would not have acted as if they had the full resources of the NOPD behind

them.

In light of the above, Plaintiff has plausibly pleaded that the City had several widespread

practices that were linked to Plaintiff's injuries. Accordingly, the Court should deny the motion

to dismiss his policy claim.

## B.  PLAINTIFF PAUSIBLY ALLEGED A CITY POLICYMAKER HAD KNOWLEDGE OF THE OFFICIAL POLICY OR CUSTOM

The City also argues Plaintiff failed to plead a City policymaker had actual or constructive

knowledge of an unwritten custom. In doing so, Defendant City essentially turns a blind eye to

the Consent Decree pled by Plaintiff, which made the policymakers in the City well aware of its unlawful discriminatory policies and procedures resulting in misconduct, including those involving hiring practices, police academy and in-service training, bias free policing, and recruitment.

Who other than City policymakers would have the power to agree to the Consent Decree and implement changes to address the pattern or practice of unlawful misconduct in the NOPD that was initiated by the DOJ? *See USA v. City of New* Orleans, E.D. La., No. 12-1924, (Rec. doc. 2-1, p. 6). ("The City of New Orleans ("City"), including the New Orleans Police Department ("NOPD" or "Department"), and the United States of America (collectively, "the Parties") enter into this agreement ("Agreement") with the goal of ensuring that police services are delivered to the people of New Orleans in a manner that complies with the Constitution and laws of the United States."). Further, the Independent Monitor noted that many of the problems raised in the Consent Decree persisted as of April 2018. (Rec. doc. 1, ¶¶ 33-34). Given Plaintiff pled the problems were cited in the Consent Decree, again by the Amended Consent Decree, again by the Independent Monitor, a mere two months prior to the attack and during Defendant Officers' tenure, which indisputably were known by City policymakers, Plaintiff plausibly pled knowledge of the official policy or custom on the part of a City policymaker.

## C.     PLAINTIFF ADQUATELY PLED THAT A FAILURE TO TRAIN OR SUPERVISE CAUSED PLAINTIFF'S INJURIES

While ignoring facts in the Complaint, the City contends Plaintiff failed to provide sufficient facts for a failure to train claim. Not so. Plaintiff alleges that Defendant City's failure to train, supervise, and discipline its officers caused Plaintiff's rights to be violated. *Snow v. City of El Paso, Texas*, 501 F.Supp.2d 826, 833 n. 5 (W.D. Tex. 2006) (failure to train, supervise, and discipline claims, involve the same basic elements: inadequacy, deliberate indifference, and

causation). Specifically, Plaintiff's complaint alleges that the City took people—like Galman and Sutton—who should not be officers and gave them a badge and a gun. That despite knowing their training process was deficient (including as it relates to anti-bias training), they did not adequately supervise these officers. As a result, when those officers engaged in misconduct rather than discipline or train its officers, the department covered up for their misconduct. Resultantly, officers—like Galman and Sutton—continued to engage in misconduct because they knew that the Department would cover it up for them, if at all possible. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

In similar circumstances, courts have denied the City's attempts to dismiss complaints against them for their failure to supervise and discipline. For example, in *Bennett v. Serpas*, the City argued that, "Plaintiff has failed to make a claim because Plaintiff's Amended Complaint gives conclusory statements and 'is devoid of any factual allegations concerning the training or discipline NOPD officers received or should have received.'" Case No. 15-3087, 2017 WL 2778109, at *3 (E.D.LA Jun. 26, 2017). However, the plaintiff incorporated the Quarterly Monitoring Report from the consent decree that detailed deficiencies in the training and supervising of NOPD officers. *Id.* As a result, the Court denied the defendants' motion to dismiss. Here, too, and for similar reasons, the Court should deny the City's Motion. *See Id.*

In sum, the foundation of Defendant City's argument rests on its urging this Court to divorce the actions of Defendants Galman and Sutton from the Department as some sort of aberration and to read Plaintiff's Complaint in a vacuum, completely devoid from reality. However, the Court can and must take judicial notice of the fact that the NOPD is under a federal consent decree. *See Hicks-Fields v. Harris County, Texas*, 860 F.3d 803, 809 (5th Cir. 2017) (citing with approval *Daniel v. Cook Cty.*, 833 F.3d 728, 740-41 (7th Cir. 2016)). Furthermore, and pursuant thereto, Defendant City was at all times relevant, aware that its police department

was constitutionally-deficient as it related to: (1) bias free policing; (2) recruiting police officers; (3) police academy and in-service training; (4) evaluating it's officers' performance; (5) supervision of its officers; and (6) and the intake and investigation of complaints of misconduct against its officers. *See ,e.g., USA v. City of New Orleans*, 2:12-cv-01924-SM-JCW, Dkt. 574-1, "Comprehensive Reassessment of the Consent Decree Monitor Pursuant To Paragraph 456 of the NOPD Consent Decree" (E.D. LA Jan. 24, 2019). Defendant Officers' conduct was not a glitch in the system, but a product of it. Accordingly, Defendant City's Motion to Dismiss Count I should be summarily denied.

### III.     PLAINTIFF ADEQUATELY PLED CLAIMS FOR NEGLIGENT HIRING AND NEGLIGENT RETENTION AND SUPERVISION (COUNTS V AND VI)

Under Louisiana law, it is well established that the elements for a negligence claim are: (1) the defendant had duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was cause in fact of plaintiff's injuries; (4) the defendant's substandard conduct was legal cause of plaintiff's injuries; and (5) the plaintiff sustained actual damages. *Zoller v. Zurich American Insurance Company*, 356 F.Supp.3d 598 (E.D.La.2018).

Here, Defendant City does not present a challenge that Plaintiff failed to plead any of the requisite elements. Rather, Defendant City seeks dismissal of the negligence claims on the basis that Plaintiff lacks factual support for his allegations. As to the negligent hiring, Defendant City claims Plaintiff did not show how the City failed to conduct an adequate investigation or provide information about Defendant Police Officers' propensity for physical aggressive behavior or racist conduct, or how the City should have known about this propensity. Concerning the negligent retention claim, Defendant City argues that Plaintiff was required to show how prior investigations were casually related to the probability that Defendant Galman was unfit or would

act aggressive.[2]

However, Defendant City's arguments are premature at this stage of the litigation. Plaintiff is not required to allege such specific details required to essentially prove his claims in order to survive dismissal at the motion to dismiss stage. Such challenges are appropriate for trial. *See Sapp v. Wood Group PSN, Inc.*, 153 F.Supp.3d 947 (E.D.La.2015) (questions of breach and causation in negligence action under Louisiana law are fact-driven inquiries left to factfinder); *Rowe v. Schumpert Medical Center*, 647 So.2d 390, No. 26, 334-CA (La. App. 2 Cir. 12/7/94), writ denied 1995-0075 (La. 3/17/95), 651 So.2d 268. (whether defendant has breached duty owed in negligence action is a question of fact). Instead, Defendant City must accept Plaintiff's well pleaded allegations as true. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

Also telling, not a single case upon which Defendant City relies, is at the motion to dismiss stage. In fact, Defendant City's legal authority unequivocally supports Plaintiff's position that Defendant City's arguments are premature as each and every case cited by Defendant was decided on the merits and ***not*** at the motion to dismiss stage. *See Roberts v. Benoit,* 605 So. 2d 1032 (La. 1991) (opinion of the La. Supreme Court on the merits after trial); *Bohnfalk v. City of New Orleans*, 628 So.2d 1143 (La. App. 4 Cir. 1993) (opinion of the Court of Appeal on the merits after trial); *Barrios-Barrios v. Clipps*, 825 F.Supp.2d 730 (E.D. La. 2011) (opinion of the District Court on the merits after summary judgment)). Accordingly, Defendant City's arguments

---

[2] As part of its argument, Defendant City takes a huge leap suggesting Plaintiff should have all of Defendant City's files to substantiate his claims, including but not limited to, policies on hiring, supervision and discipline, background checks and investigations concerning the hiring of Defendant Officers, and personnel files of Defendant Officers. Notwithstanding, the City's suggestion would eviscerate the ability to obtain discovery. Also significant, when Plaintiff attempted to seek relevant information concerning these issues as permitted by the Freedom of Information Act ("FOIA"), Defendant City unreasonably delayed and then improperly withheld such information. Plaintiff even attempted a second FOIA request with little if any responsive information. Defendant City continues to assert improper objections in its attempt to cover up the requested information.

are untimely and should be rejected as improper.

When Plaintiff's allegations are considered, it is evident Plaintiff pleaded sufficient facts to support his negligence claims, almost all of which were omitted from Defendant City's Motion. Specifically, Plaintiff alleged the "NOPD knew their applicant screening and hiring practices were constitutionally deficient." (Rec. doc. 1, ¶ 29). Plaintiff also alleged the following material facts:

- In 2017, the Independent Monitor, who was appointed by the Federal Court to oversee enforcement of the Consent Decree regarding the NOPD's hiring policies and practices, found that, "NOPD's process for conducting background investigations of potential Academy recruits is not designed or implemented to ensure the Department makes offers only to highly qualified, ethical candidates with personality traits meeting the needs of a modern police department. Of the 137 active Academy recruit files we reviewed over the past month, *about one third (59) of the recruit files for applicants accepted into the Academy had documented risk indicators without a corresponding explanation as to why or how those risk indicators were overcome*." (emphasis added). (*Id.* at ¶ 30);

- Additionally, the Independent Monitor noted that the, "existence of these and other risk indicators in the recruit files, without evidence of meaningful follow-up, suggests to us *NOPD may be accepting candidates into the Academy who should not be NOPD officers. Our discussions with and interviews of NOPD personnel give us even greater concern in this regard.* More than one NOPD employee noted that if a candidate does not violate an automatic 'disqualifier,' he/she generally is accepted into the Academy." (emphasis added). (*Id.* at ¶ 31);

- *NOPD* Officers reported to the Independent Monitor their *"shared belief that the Department has lowered its standards in an effort to fill Academy classes, and that the background investigation process is flawed."* (emphasis added). (*Id.* at ¶ 32).

- On April 10, 2018, the Independent Monitor filed its 2017 Annual Report on the Consent Decree, which noted that, "Our in-depth review of candidate background files encompassed *findings that included insufficient training of background investigators, incomplete investigations, a review process overly focused on 'automatic disqualifiers' at the expense of other facts that collectively signal relevant risks, lack of documentation of steps taken to investigate a candidate, and a myriad of other concerns and deficiencies.*" (emphasis added). (*Id.* at ¶ 33).

- Defendant Officers were treated more favorably than Mr. Gomez, as they knew they would be protected by NOPD because they were police officers; sadly, this is part and parcel of NOPD's history and such favorable treatment causes misconduct by its officers

to flourish because they know they will not be punished for their actions no matter how obvious. (*Id.* at ¶ 27).

- In fact, at the time of this occurrence, the NOPD Public Integrity Bureau already had two separate internal investigations open on Defendant Galman from which he had received no discipline nor been stripped of his police powers despite still being on his probationary period. (*Id.* at ¶ 28).

- With the knowledge that its hiring practices were flawed, NOPD still failed to adequately train and supervise its officers. In this instance, when the Defendant Officers engaged in misconduct, the Department defaulted to its Blue Code of Silence. (*Id.* at ¶ 34).

- Indeed, NOPD investigated this incident as if Mr. Gomez was the culprit when he was clearly the victim. However, because every third-party witness corroborated Mr. Gomez's version of events and that he was never the aggressor with Defendant Officers, NOPD had no choice but to arrest and charge Defendant Officers with simple misdemeanor battery and theft. (*Id.* at ¶ 35).

- Despite the severity of Mr. Gomez's injuries, no felony charges were filed and Defendant Officers were not charged with a hate crime. (*Id.* at ¶ 36).

Plaintiff incorporated the above allegations, among others, in his Count V - Negligent Hiring, and also alleged that:

- Defendant City had a duty to thoroughly investigate Defendant Officers' backgrounds before hiring them and allowing them to protect the people and property of the City of New Orleans. (*Id.* at ¶ 72);

- Defendant City breached its duty by failing to conduct adequate investigations which might have revealed that Defendant Officers were unsuitable for the duties they were hired to fulfill. (*Id.* at ¶ 73);

- It was unreasonable for Defendant City to hire Defendant Officers in light of information that it knew or should have known about Defendant Officers' propensity for physical aggressive behavior and/or racist, nativist, or xenophobic conduct. (*Id.* at ¶ 74); and

- Defendant City's breach of that duty was the actual and proximate cause of the assault and battery of Mr. Gomez by Defendant Officers, which left Mr. Gomez with physical and emotional injuries. (*Id.* at ¶ 75).

In light of the above allegations, which must be taken as true, Plaintiff adequately pled that Defendant City failed to conduct adequate investigations of the Defendant Officers that

would have revealed they were unsuitable for their duties, and that it was unreasonable for Defendant City to hire them as it knew or should have known their propensity for physical aggressive and/or racist, xenophobic conduct. At the time of hire of Defendant Officers, the Independent Monitor found that despite the Consent Decree, the Department continued having "flawed" hiring policies resulting in the hire of candidates "who should not be NOPD officers." As the evidence will show, two of those officers, were Defendants Sutton and Galman.[3]

With respect to Defendant Officers' propensity for physical aggressive and/or racist, xenophobic conduct, the fact that they beat Plaintiff, who was just sitting at a bar, senselessly into unconsciousness simply because he "wasn't American enough" and because he needed "to go back to the place he was from", is clearly indicative of persons who have aggressive and/or racists tendencies. (*Id.* at pp. 1-2). Plaintiff believes that this is not the first time that Defendant Officers have displayed such appalling conduct, and that Defendant City was or should have been aware of their past. Afterall, the very basis of the DOJ investigation of the NOPD initially arose because of its pattern and practice of unlawful, discriminatory, conduct.[4] In any event, Plaintiff has pled sufficient factual evidence to support a claim for negligent hiring.[5]

---

[3] Defendant City's argument that in order to plead a negligence claim, Plaintiff must show how the City failed to conduct an adequate investigation is a non-starter. "How" a defendant breaches its duty, is not an element of a negligence claim.

[4] Significantly, the very genesis of the Consent Decree derived from the United States Department of Justice's ("DOJ") determination in 2010 "that it was initiating an investigation of the New Orleans Police Department for an alleged pattern or practice of unlawful misconduct, pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141"); the anti-discrimination provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 42. U.S.C. §3789d ("Safe Streets Act"); and Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d ("Title VI")." *See USA v. City of New Orleans*, E.D., La., No. 12-1924, (Rec. doc. 2-1, pp. 6-7). As a result, the DOJ issued a report of its findings on "a number of patterns or practices of unconstitutional conduct and details DOJ's concerns about a number of NOPD policies and practices." *Id.*, p. 7. This discriminatory conduct continues with Defendant Officers.

[5] Defendant City also contends Plaintiff did not show Defendant Officers were engaged in furthering the employer's business when they stepped beyond the line of duty. Plaintiff explained how Defendant Officers acted to further the employer's business in section V herein, vicarious liability, which Plaintiff incorporates herein by reference. Moreover, *Roberts,* 605 So.2d at 1037, which Defendant cites in support of its argument, relies upon *Nishan v. Godsey,* 166 F. Supp. 6 (E.D. Tenn. 1958) for this "acting in scope" premise. Notably, the *Nishan* Court recognized that a department's prior knowledge of any reckless tendencies of its officers would be a significant consideration

Moreover, as to Count VI, Negligent Retention and Supervision Claim, Plaintiff incorporated the allegations above of paragraphs 27 – 36, and also stated:

> During the course of Defendant Officers' employment, Defendant City knew or should have known that they were unfit for their job and/or in all probability would act in a manner dangerous to the public. (*Id.* at ¶ 78).

> Defendant City had a duty to terminate or, at the very least, provide reasonable supervision of Defendant Officers given their wrongful, and dangerous propensities. (*Id.* at ¶ 79).

> Defendant City, despite its ability to control, discipline or terminate Defendant Officers, negligently retained and/or failed to exercise reasonable care to adequately supervise Defendant Officers in their positions as police officers and to prevent them from committing the wrongful acts complained of herein against Mr. Gomez. (*Id.* at ¶ 80).

> Defendant City's breach of that duty was the actual and proximate cause of the assault and battery of Mr. Gomez by Defendant Officers, which left Mr. Gomez with physical and emotional injuries. (*Id.* at ¶ 81).

For the reasons stated above concerning the sufficiency of the negligent hiring claim, Defendant City knew or should have known Defendant Officers were unfit and should have been terminated prior to July 24, 2018, the date Plaintiff was beaten. Also significant, during the probation period, Galman had at least two prior internal investigations, which Plaintiff believes were indicative of unfit behavior for a police officer. (*Id.* at ¶ 28). In responsive documents to Plaintiff's second FOIA request, it was revealed that in one of the prior investigations, Galman's supervisor also was disciplined.

Lastly, Defendant City's contention that Plaintiff's negligent retention and supervision claims do not allege Defendant City's negligence caused Mr. Gomez's injuries is also flawed.

---

in assessing liability on the part of the City even when acting completely outside the scope of their duties. In fact, the *Nisham* court relied on *McCrink v. City of New York*, 296 N.Y. 99, 71 N.E.2d 419, in which the court found municipal liability for the acts of an officer that were *completely outside the scope of his authority* because the Commissioner of Police had previous knowledge of derelictions on the part of the officer and nevertheless retained him on the force. In the instant case, Plaintiff alleges similarly facts, including that "at the time of this occurrence, the NOPD Public Integrity Bureau already had two separate internal investigations open on Defendant Galman." (Rec. doc. 1, ¶28). Thus, even if the Court concludes Defendant Officers acted completely outside the scope of their authority, Defendant City would be negligent because it was on notice.

First, Plaintiff does not have to prove causation at the motion to dismiss stage. *See Sapp,* 153 F.Supp.3d at 955; *See gen. Bohmfalk,* 628 So. 2d at 1143. Second, Plaintiff adequately pled that the flawed investigation performed by Defendant City, when it hires officers, lets dangerous persons fall through the cracks and become police officers (Rec. doc. 1, ¶¶30-34), that the City favors its officers to the point where they know they can act with impunity, which causes misconduct to flourish within the NOPD (*Id.* at ¶ 27), and that at the very least, the City should have known that Galman and Sutton were unfit for service, failed to take steps to prevent such wrongful acts, and failed to terminate them or adequately supervise them. (*Id.* at ¶ 78-80). This negligence was the proximate cause of Plaintiff's injuries. (*Id.* at ¶ 81). In short, discovery will reveal Defendant City is liable for negligent retention and supervision.

In summary, not only did Defendant City fail to raise any viable challenge to the negligence claims, but the Complaint sufficiently alleges facts to support claims for negligent hiring and negligent retention and supervision, and consequently, Defendant City's Motion to Dismiss counts V and VI should also be denied.

## IV. <u>THE COMPLAINT ALLEGES SUFFICIENT FACTS THAT DEFENDANT CITY KNEW SEVERE EMOTIONAL DISTRESS WOULD BE CERTAIN OR SUBSTANTIALLY CERTAIN (COUNT IV)</u>

Defendant City's contention that Plaintiff's allegations of intentional infliction of emotional distress are insufficient because "[t]he City here clearly did not know Galman and Sutton intended to commit the acts before they occurred" is a nonstarter. Defendant City's denial of what it knew or did not know is a factual issue outside the four corners of the Complaint that is not a proper basis upon for a motion to dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Notwithstanding the procedural defect in Defendant City's argument, Plaintiff's allegations, which must be taken as true, did plead that Defendant City was aware severe

emotional distress would be certain or substantially certain based on its conduct. For example, the Complaint describes Defendant City's flawed investigation of its applicants and knowledge of such flawed hiring practices (Rec. doc. 1, ¶¶29, 30, 32), its hiring of applicants who should never be officers (*Id.* at ¶ 31), its history of favorable treatment causing misconduct of its officers armed with the knowledge they would not be punished, as was the case here (*Id.* at ¶ 27, 36), its favoritism toward officers over victims and looking the other way when issues arise (*Id.* at ¶¶24, 25, 27), its lack of training and supervision (*Id.* at ¶ 34), its knowledge of prior investigations of Galman during his probationary period (*Id.* at ¶ 87), and its lowered standards to fill academy classes (*Id.* at ¶ 32). From these allegations, not only is it plausible that the City knew its conduct would result in misconduct that would lead to emotional distress, but the City did, in fact, know its conduct would lead to emotional distress. *See USA v. City of New Orleans*, E.D., La, No., (Rec. doc. 2-1, p. 7). (DOJ issued a report finding "a number of patterns or practices of unconstitutional conduct and details DOJ's concerns about a number of NOPD policies and practices.").[6] Accordingly, Defendant City's Motion to Dismiss count IV should also be denied.

## V.     PLAINTIFF PLED ADEQUATE FACTS FOR A VICARIOUS LIABILITY CAUSE AGAINST DEFENDANT CITY (COUNT VII)

Pursuant to La. Civ. Code art. 2320, an employer is vicariously liable for the torts of its employees committed "in the exercise of the functions in which they are employed." When considering the issue, courts look to whether the tortious conduct occurred during the course and scope of employment. *Benoit v. Capitol Mfg. Co.*, 617 So.2d 477, 479 (La. 1993). The course of employment test refers to time and place, and the scope of employment test considers the

---

[6] The City further argues that it did not ratify Defendant Officers' conduct because it arrested and terminated them. An action taken only after the matter was publicized. Regardless, Defendant City ignores Plaintiff's allegations that the City by its conduct, including poor investigations and permissive attitude, "permit[ed Mr. Gomez] to be subjected to, a hate crime, assault, battery, and false arrest that caused severe bodily injuries." (Rec. doc. 1, ¶66.) It is certainly plausible that such severe bodily injuries would lead to or be accompanied by severe emotional distress.

employment-related risk of injury. *Id.* The Louisiana Supreme Court articulated four factors for analyzing whether an employer is vicariously liable for a tort committed by an employee: (1) whether the tort was primarily employment-rooted, (2) whether the tort was reasonably incidental to the performance of the employee's duties, (3) whether the tort occurred on the employer's premises, and (4) whether the tort occurred during the hours of employment. *See Labrane v. Lewis*, 292 So.2d 216, 218 (La. 1974). Not all factors need be present to find an employer vicariously liable. *Baumeister v. Plunket*, 673 So.2d 994, 997 (La. 1996). But, the tortious conduct must be such as can be "regarded as a risk of harm fairly attributable to the employer's business…." *See Labrane*, 292 So. 2d at 218. As explained in *Ermert v. Hartford Insurance Co.*, 559 So.2d 467, 476 (La. 1990):

> The master's vicarious liability for the acts of its servant rests not so much on policy grounds consistent with the governing principles of tort law as in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities.

*Id.* As such, courts can look to whether the conduct in question is foreseeable as a guide to whether it is fairly attributable to or characteristic of the employer's business. *See, e.g., Baumeister*, 673 So.2d at 998 (analyzing whether conduct resulting in injury was foreseeable in the context of employment). The issue of vicarious liability must be examined "on its own merits to determine whether the conduct is to be regarded as within the scope of the employee's employment." *Ermert*, at 477.

In the present case, the Defendant Officers attempted to instigate an altercation by bullying Mr. Gomez about his ethnicity and heritage, and repeatedly calling him a liar and, pulling off his beret. (Rec. doc. 1, ¶¶13-15.) This escalated to Mr. Gomez being attacked by Defendant Officers outside a bar that caused serious injury to Mr. Gomez. (*Id.*, at ¶16.) Discovery will reveal that prior to the acts that led to Mr. Gomez being battered, one of the Defendant Officers

came to the assistance of the other.  Whether that assistance was an effort to keep the peace or to protect a fellow "brother in blue," the assistance is exactly what Defendant City would desire and expect from its officers.  As such, the assistance provided by the Defendant Officer is fairly attributable to Defendant City, and Defendant City is liable for any torts committed during such assistance.  *See Labrane*, 292 So.2d at 218.

Indeed, a tort committed in the act of assisting a fellow officer is precisely what the court in *Russell v. Noullet*, 721 So.2d. 868 (La. 1998), a case relied upon by Defendant City, surmised could establish vicarious liability.  In *Russell*, an off duty New Orleans police officer assisted a police officer recruit who had gotten into a fight.  *Id.* at 870, 872.  In fact, pursuant to police rules, he was duty bound to do so.  *Id.* at 872.  Had his assistance led to Plaintiff's injuries, the Court opined vicarious liability could lie.  ("If Officer Noullet had … simply … entered his car in order to retreat from the pursuing mob after [the police officer recruit] left the scene, the record arguably might support the trial judge's finding of vicarious liability.").  *See also*, *Cheatham v. City of New Orleans*, 378 So.2d 369, 373-74 (La. 1979)  ("We conclude that when Reboul entered into the fight with Cheatham it was foreseeable, indeed expected, that his partner would intervene on his behalf if it became necessary.").

That the assisting Defendant Officer was off duty, did not identify himself as a police officer, or used excessive force in rendering his assistance does not absolve the City of vicarious liability.  The assisting Officer in *Noullet* was off duty.  Yet, the *Noullet* Court found vicarious liability could be established.  And, although the assisting defendant officer failed to identify himself as a police officer was a breach of duty, such failure does not preclude a finding that the assisting Defendant Officer was acting within the scope of his duties as a police officer.  *See Justin v. City of New Orleans*, 499 So.2d 629, 631 (La. App. 4th Cir. 1986):

We also disagree with the trial court's conclusion that the risk which injured Justin was outside the scope of the appellants duty as police officers. A police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his actions. His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent man under the Circumstances (citations omitted).

This duty is breached when an officer fails to announce his presence and identity or does not make sure that this announcement is heard and understood.

This scenario played out again when Defendant Officers stopped Mr. Gomez's truck as he was attempting to drive home, ordered him out of his truck, and proceeded to beat him mercilessly into a state of unconscious. (Rec. doc. 1, ¶¶19-21.) One officer held Mr. Gomez down while the other officer beat him. Through their actions, Defendant Officers acted under "color of law" and "held Mr. Gomez under false arrest" by pinning him to ground face down with his hands behind his back. (*Id*. at ¶¶ 58, 59). As police officers, they called dispatch and identified themselves as police officers, whereupon a signal was sent indicating an officer was in emergency need of assistance. (*Id.* at ¶21.)

In sum, the allegations in the Complaint state that Defendant Officers engaged in an arrest, albeit a false arrest. and called for back-up. The acts of arresting people and calling for backup are surely within their scope of duties as police officers.

Also significant, the Supreme Court of Louisiana made clear that the "arising out of and in the course of employment" inquiry generally requires the trier of fact to determine vicarious liability of an employer. *Richard v. Hall*, 874 So.2d 131, (La. 2004); *see gen. Bowdoin v. WHC Maintenance Services, Inc.,* 230 So.3d 232 (La. App. 3rd Cir. 2017). In fact, every case relied upon by Defendant City was decided <u>not</u> at the on motion to dismiss stage, but rather, <u>after</u> factual development through discovery. Notably, Defendant City not only seeks to avoid factual development, but has refused to provide relevant information in response to Plaintiff's FOIA

requests.[7]

 While Plaintiff will fully develop its claim for vicarious liability through discovery, at this stage it is eminently plausible from the pleadings that one, or both, of the officers acted in conformance with their duties as a police officer and in Defendant City's interests. Because, the Complaint alleges sufficient facts for vicarious liability to lie, Defendant City's Motion to dismiss count VII should be denied.

## VI.   DEFENDANT'S ARGUMENT CONCERNING SUPPLEMENTAL JURISDICTION IS RENDERED MOOT BY DEFENDANT SUTTON'S ANSWER

 Defendant City's argument that this Court should decline to exercise jurisdiction over state law claims because Defendant City is entitled to dismissal of all of Plaintiff's 1983 claims, falls flat. First, it presupposes dismissal, which as demonstrated above is a flawed supposition because Defendant City is not so entitled. Second, because Defendant Sutton answered the 1983 claims, the Court's federal jurisdiction is maintained, and Defendant City's argument is moot.

## VII.   CONCLUSION

 For the reasons stated above, Plaintiff, therefore, respectfully requests that this Court deny City's Motion in its entirety, require Defendant City to file an Answer to the Complaint within ten (10) days of the order, and grant such other and further relief that this Court deems just and proper.

---

[7] Defendant City also argues that there are no allegations that Defendant Officers either were motivated by anything other than purely personal considerations or acted in the NOPD's or Defendant City's interests. However, Defendant City ignores the fact that the allegations in the Complaint support that one of the officers assisted the other, engaged in an arrest, and utilized back-up as a police officer—acts falling within the scope of their duties as a police officer. That act of arrest and assistance is clearly within the interest of the City and NOPD, whether for keeping the peace or protecting fellow police officers.

Respectfully Submitted,

By:     /s/Diana L. Fitzgerald
        Diana L. Fitzgerald, Esq. (FLSBN 15228)
        Email: Diana@FILawyers.com
        David C. Isaacson, Esq. (FLSBN 81691)
        Email: David@FILawyers.com
        FITZGERALD & ISAACSON, LLP
        901 Ponce De Leon Boulevard, Suite 202
        Miami, FL 33134
        Telephone: (305) 372-7300
        Facsimile: (305) 447-0043
        (*Counsel admitted Pro Hac Vice*)

               And

        Jarrett Adams, Esq. (NYSBN 5455712)
        Email: Jadams@JarrettAdamsLaw.com
        Jeanette Samuels, Esq. (ILSBN 6313890)
        Email: Sam@ChiCivilRights.com
        THE LAW OFFICES OF JARRETT ADAMS,
        PLLC.
        40 Fulton Street, Floor 23
        New York, NY 10038
        Telephone: (646) 880-9707
        Facsimile: (646) 880-9707
        (*Counsel admitted Pro Hac Vice*)

               And

        Bradley J. Schlotterer, Esq. (LASBN 24211)
        Email: Brad.Schlotterer@keanmiller.com
        Sean T. McLaughlin, Esq. (LASBN 31870)
        Email: Sean.McLaughlin@keanmiller.com
        Zoe W. Vermeulen, Esq. (LASBN 34804)
        Email: zoe.vermeulen@keanmiller.com
        KEAN MILLER, LLP
        909 Poydras Street, Suite 3600
        New Orleans, LA 70112
        Telephone: (504) 620-3354
        Facsimile: (504) 585-3051
        (*Local Counsel*)

        *Attorneys for Plaintiff Jorge Gomez*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of October, 2019, I electronically filed the foregoing with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class U.S. mail to all *pro se* parties.

 /s/ Diana L. Fitzgerald

Diana L. Fitzgerald