UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JORGE GOMEZ                                              CIVIL ACTION

VERSUS                                                   NO. 19-11803

THE CITY OF NEW ORLEANS,                                 SECTION M (1)
JOHN GALMAN, and
SPENCE SUTTON

**<u>ORDER & REASONS</u>**

This matter is before the Court on a motion by the City of New Orleans (the "City) to dismiss plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff Jorge Gomez responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law the Court issues this Order & Reasons finding that Gomez's allegations are deficient, but giving him 14 days from the date of this Order & Reasons to seek leave to file an amended complaint curing the deficiencies.

**I.   BACKGROUND**

This matter concerns an incident at a bar instigated by defendants John Galman and Spencer Sutton, who were both off-duty New Orleans Police Department ("NOPD") officers. On July 23, 2018, Gomez, a United States military veteran of Honduran descent, went to the Mid-City Yacht Club in New Orleans dressed in military fatigues and a Honduran green beret.[3] Gomez was sitting at the bar when Galman and Sutton entered the establishment and began bullying Gomez about his ethnicity, heritage, and service.[4] Gomez alleges that Galman and

---

[1] R. Doc. 17. Plaintiff's claims against the off-duty police officers are not the subject of this motion and remain in place.
[2] R. Doc. 21.
[3] R. Doc. 1 at 3.
[4] *Id.*

1

Sutton called Gomez a "fake American" and a liar, and attempted to pull off his clothes.[5] Galman and Sutton stole Gomez's beret off his head and left the bar.[6] When Gomez attempted to retrieve his hat, Galman and Sutton continued to make "racist-nativist" comments, and "used excessive force against" Gomez.[7] A couple of bystanders intervened to aid Gomez.[8]

When Gomez got into his vehicle and attempted to drive away, Galman and Sutton blocked Gomez's path and ordered him to exit the vehicle.[9] Gomez complied, and Galman and Sutton beat Gomez until he lost consciousness. Galman and Sutton contacted the NOPD dispatch and requested assistance.[10] Gomez alleges that Galman and Sutton attempted to cover up their conduct by initiating a criminal investigation against Gomez.[11] The responding NOPD officers allowed Galman and Sutton to go home while Gomez was taken to the hospital where he was questioned about the incident.[12] Later that day, Galman and Sutton were arrested, and the NOPD began termination proceedings the next day.[13]

On July 23, 2019, Gomez filed this suit against the City, Galman, and Sutton seeking damages for the physical and mental injuries he sustained as a result of the July 23, 2018 incident.[14] Gomez alleges that Galman and Sutton are liable under 42 U.S.C. § 1983 for violating his rights guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments by

---

[5] *Id.* at 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 4-5.
[13] *Id.* at 6 (alleging that officers were arrested and charged). The Court also takes judicial notice of the NOPD's announcement of Galman and Sutton's arrest and termination proceedings. Gary S. Sheets, *NOPD Arrests Two Officers for Assault, Begins Termination Proceedings, NOPD News* (July 24, 2018), https://nopdnews.com/post/July-2018/nopd-arrests-two-officers-for-assault,-begins-term/. *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record").
[14] R. Doc. 1 at 1-17.

engaging in an unlawful stop, detention, arrest, and use of excessive force.[15] Gomez also alleges that Galman and Sutton are liable under Louisiana state law for assault, battery, false arrest, and intentional infliction of emotional distress.[16]

Gomez alleges several claims against the City. First, Gomez alleges that the City is liable under § 1983 for the violation of his First, Fourth, Eighth, and Fourteenth Amendment rights "to be on a public street, to be left alone, to locomotion, to travel, to due process of law, to equal protection of law, to freedom from unreasonable search and seizures, to freedom from excessive force, and to freedom from cruel and unusual punishment."[17] Gomez further alleges that the City's failure to train and supervise NOPD officers contributed to his unlawful stop, detention, and arrest, and the use of excessive force.[18] Gomez also alleges that the City is vicariously liable under Louisiana law for Galman and Sutton's actions, and liable in its own right under Louisiana law for intentional infliction of emotional distress, negligent hiring, retention, and supervision, and violating the public records law.[19]

## II. PENDING MOTION

The City argues that Gomez's § 1983 and state-law claims against it fail for lack of supporting factual allegations.[20] The City contends that it cannot be held liable on any legal theory Gomez advances because Galman and Sutton were off-duty and acting out of purely personal motives, unconnected to their employment with the NOPD, when the incident occurred.[21] As to the § 1983 claims, the City argues that the complaint contains conclusory allegations regarding the failure to train and supervise without identifying a specific policy or

---

[15] *Id.* at 9-10
[16] *Id.* at 10-11.
[17] *Id.* at 7-8.
[18] *Id.* at 8.
[19] *Id.* at 11-15.
[20] R. Doc. 17-1 at 1. The motion does not address Gomez's public records claim.
[21] *Id.* at 1-2.

3

custom, promulgated by or known to a specific policymaker, that was the moving force behind the alleged constitutional violations.[22] The City further argues that there is no causal link between any alleged insufficient hiring and training and Galman and Sutton's off-duty actions taken out of personal motives.[23]

Similarly, with respect to the state-law claims, the City argues that it cannot be held vicariously liable for Galman and Sutton's actions because they were not acting within the course and scope of their employment, as they were off-duty and not performing actions incidental to their duties as NOPD officers.[24] Also, the City argues that Gomez did not state a claim for negligent hiring, retention, or supervision because he alleges no facts stating what the City should have known about Galman and Sutton's alleged "propensity for physical aggressive behavior" and "racist, nativist, or xenophobic conduct," what activities they engaged in that alerted the City to their allegedly being unfit for the job and dangerous to the public, or how any supervision would have prevented the actions they took while off duty.[25] Finally, the City argues that Gomez cannot maintain his intentional infliction of emotional distress claim because there is no evidence that the City knew about or desired the harm Gomez sustained as it did not know that Galman and Sutton intended to commit the alleged acts before they occurred.[26]

In opposition, Gomez argues that he pleaded adequate facts to state § 1983 and state-law claims against the City.[27] As to the § 1983 claim, Gomez argues that the City had an official policy or custom of protecting its officers from their own wrongdoing known as the "blue code of silence," and of instituting insufficient hiring and training procedures to increase the number

---

[22] *Id.* at 4-10.
[23] *Id.* at 8 n.4.
[24] *Id.* at 11-13.
[25] *Id.* at 14-16.
[26] *Id.* at 16.
[27] R. Doc. 21.

4

of officers.[28] Gomez claims that Galman and Sutton felt empowered by the "blue code of silence," which caused them to act with impunity in beating Gomez and then calling the NOPD for backup.[29] Gomez contends that the City is a policymaker that had actual or constructive knowledge of the alleged policy or custom because the City was aware of the problems within the NOPD identified in the federal consent decree, amended consent decree, and independent monitor's report.[30]

Gomez argues that he alleged sufficient facts to support his failure to train or supervise claim because he incorporated into his complaint the independent monitor's report which outlined deficiencies in the NOPD's hiring procedures.[31] According to Gomez, the report found that the NOPD lowered its standards and accepted persons who should not have been officers, including Galman and Sutton, whose racist and violent tendencies would have been discovered with better hiring practices.[32] As support for this notion, Gomez points to two prior NOPD internal investigations concerning Galman.[33] Moreover, Gomez argues that he adequately pleaded a claim for intentional infliction of emotional distress because the City knew that severe emotional distress would result from its faulty hiring practices, lack of training and supervision, and the "blue code of silence" that allowed officers to act without fear of punishment.[34] Finally, Gomez contends that he adequately alleged that the City is vicariously liable for Galman and Sutton's actions because one of them came to the other's assistance, which is the response the City expects of its police officers.[35]

---

[28] *Id.* at 4-6.
[29] *Id.* at 5.
[30] *Id.* at 7.
[31] *Id.* at 7-8.
[32] *Id.* at 7-15.
[33] *Id.* at 12.
[34] *Id.* at 15-16.
[35] *Id.* at 17-20.

5

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the

facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the

complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Section 1983

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

In *Monell*, the Supreme Court held that a municipality is liable under § 1983 only when the municipality itself caused the constitutional violation at issue. 436 U.S. at 694. To succeed on a *Monell* claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010). "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks, alterations, and citation omitted).

### 1. Color of law

The City argues that there are no allegations supporting a violation of Gomez's constitutional rights because Galman and Sutton were off duty and acting out of personal motivation. R. Doc. 17-1 at 8 n.1. The Supreme Court has held that "under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945). The "color of law" analysis "does not depend on [an officer's] on- or off-duty status a the time of the alleged violation," but rather, a "court must consider: (1) whether the officer misused or abused his official power, and (2) if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties." *Bustos v. Martini Club Inc.,* 599 F.3d 458, 464-65 (5th Cir. 2010) (internal quotations marks and alterations omitted) (upholding dismissal of § 1983 claim where plaintiff did not allege facts to suggest off-duty officers who assaulted him at a bar misused or abused their official power). "If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law." *Id.* However, "color of law" in § 1983 actions is read broadly to cover situations in which the defendant has power "by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

The complaint states that Galman and Sutton were acting under color of law at the time of the incident, but the facts alleged in the complaint do not support that assertion. Notably, Galman and Sutton were off-duty at a bar, and there is no indication that they were in their NOPD uniforms or that they identified themselves as police officers at any point before they called for backup after Gomez was unconscious. There are no allegations that they used their power as police officers to assault Gomez or that there was a nexus to their official duties. In

opposition, Gomez claims that one officer came to the other's aid during the incident, but there is no indication that this was in pursuit of official duties rather than to help a friend in a bar fight. Tellingly, there are no allegations of specific actions by either Galman or Sutton that would lead to the conclusion that either was acting as a police officer. *See Duffour v. Guillot*, 2013 WL 5673605, at *1-6 (E.D. La. Oct. 17, 2013) (plaintiff did not allege any "facts to support the legal conclusion that a policy or custom was the moving force behind any constitutional harm" where the plaintiff was assaulted by an off-duty police officer at a bar); *Cruz v. Fulton*, 2016 WL 4543613, at *9-10 (E.D. La. Aug. 31, 2016) (off-duty officer, who was dressed in plain clothes and did not identify himself as a police officer, acted out of "purely personal considerations" when he assaulted and battered an individual with whom he was in a traffic accident). *Compare Smith v. Carruth*, 2017 WL 785345, at *3 (E.D. La. Mar. 1, 2017) (finding that an off-duty police officer acted under color of law when he flashed his police badge, handcuffed, *Mirandized*, and placed his victim under arrest for prostitution before raping her). Instead, Gomez's allegations indicate that Galman and Sutton took no step that would reveal to Gomez that they were acting as police officers as opposed to private citizens or off-duty police officers in their personal capacities.

The Court concludes, then, that, even viewing the allegations in the light most favorable to Gomez, Galman and Sutton were not acting under color of law at the time of the incident.

**2. Official policy or custom**

The "official policy" prong requires that the deprivation of constitutional rights be inflicted pursuant to an official custom or policy. "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001). A "custom" is a "persistent, widespread practice of city officials or

employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009) (quotation marks and citations omitted).

A policy or custom of inadequate "police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388. Thus, to prevail on this theory, "a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (quotation marks and citation omitted). Additionally, "a plaintiff must allege with specificity how a particular training program is defective." *Id*. (quotation marks and citation omitted).

Generally, proving deliberate indifference "requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Par.,* 336 F.3d 363, 370 (5th Cir. 2003) (internal quotation marks omitted). "Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id*. (internal quotation marks omitted). A narrow single-incident exception exists only "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id*. at 373.

Gomez's complaint premises the City's § 1983 liability on inadequate training and supervision of NOPD officers.[36] The complaint contains boilerplate assertions that the "City was aware of the need to train and supervise its subordinates in order to ensure that they did not violate the rights of members of the public," and that they "ignored that need, and acted unreasonably and with deliberate indifference and disregard for Mr. Gomez's constitutional rights."[37] The complaint lacks specific facts that demonstrate that the City was deliberately indifferent to the rights of citizens in terms of training its officers on how to behave on their off-duty time, or that there was a pattern of similar violations arising from inadequate training rather than an individual officer's private motivations. Apart from the boilerplate allegations *Twombly* expressly condemns, the complaint "does not identify any particular policy or persistent practice obviously likely to result in" the constitutional violations alleged. *Cruz*, 2016 WL 4543613, at *9 (dismissing § 1983 claim against the City based on "boilerplate assertion that New Orleans police officers are inadequately trained").

In his opposition (but not his complaint), Gomez points to the NOPD consent decree as embodying the City's official policy or custom of inadequate police training.[38] But nowhere in his complaint does Gomez couple a particular policy or persistent practice identified in the consent decree with any historical misconduct of the officers as would establish deliberate indifference on the part of the City. *Cf. Bennett v. Serpas*, 2017 WL 2778109, at *3 (E.D. La. June 26, 2017) (refusing to dismiss § 1983 claim against the City where specific finding in "[c]onsent [r]eport coupled with the [d]efendant [o]fficers' history of use of excessive force

---

[36] R. Doc. 1 at 7-9. There is no specific allegation premising the City's alleged § 1983 liability on the the supposed "blue code of silence." While Gomez claims that this "code" emboldened Galman and Sutton to act as they did, this allegation appears to be little more than conjecture or speculation.
[37] *Id.* at 8.
[38] R. Doc. 21 at 9.

12

establishes a deliberate indifference"). Thus, Gomez has not adequately alleged the official policy or custom prong of *Monell*.

### 3. Policymaker

The "policymaker" prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has delegated policy-making authority. *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984). "[T]he identification of policymaking officials is a question of state law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "Presumptive policymakers for the police include the mayor, the city council, and the superintendent of police." *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 372 (E.D. La. 2016) (citing *Webster*, 735 F.2d at 841-42; New Orleans Code of Ordinances § 4-501 (establishing superintendent of police as head of police department)). Because "the specific identity of the policymaker is a legal question that need not be pled[,] the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016).

Gomez's complaint states that the City and the City's final policymakers were aware of the failure to train and supervise and other unspecified "policies, customs, usages, practices, and procedures that they knew would deprive members of the public … of their constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments."[39] However, there are no facts alleged in the complaint showing that the City's policymakers promulgated or ratified the alleged failure to train and supervise.[40] The complaint does allude to the consent decree and independent monitor's report referencing hiring and training, but there are no specific facts alleged attributing

---

[39] R. Doc. 1 at 8.
[40] *Id.* at 7-9.

knowledge of a policy or custom of inadequate training or supervision to a City policymaker.[41] No individual policymaker is even mentioned in the complaint.

### 4. Constitutional violation whose "moving force" is that policy or custom

To show that a policy or custom was the "moving force" behind a constitutional violation, the plaintiff must show "either that the policy itself was unconstitutional or that it was adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019) (internal quotation marks and citations omitted).

Gomez fails to adequately allege the moving force prong of his *Monell* claim. The complaint alleges that Gomez's rights guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments were violated due to inadequate police training, hiring, and supervision, but it does not state any facts showing that a known and obvious consequence of such inadequate training, hiring, and supervision would be that an off-duty officer would engage in a bar fight. The complaint is devoid of factual allegations as would show a pattern of similar violations arising from inadequate training, hiring, or supervision, or a history of such violations by Galman and Sutton known to the City. Instead, Gomez relies upon conclusory recitals of the basic elements of a *Monell* claim. This is inadequate pleading under *Twombly*.

In sum, Gomez fails to state a cognizable § 1983 claim against the City.

### B. Negligent Hiring, Retention, and Supervision

Negligent hiring, retention, and supervision are theories of direct liability governed by the duty-risk analysis that applies to all negligence cases arising under Louisiana law. *Cruz*, 2016 WL 4543613, at *10 (citing *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1231 (La. App. 2000)). The duty-risk analysis requires the plaintiff to prove: "duty, breach of duty, cause-in-fact, scope

---

[41] *Id.* at 5-6.

of the liability or protection, and damages." *Id.*; *see also Fowler v. Roberts*, 556 So.2d 1, 4-5 (La. 1989). An employer has a duty to exercise reasonable care in selecting, retaining, and supervising an "employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party." *Cote v. City of Shreveport*, 73 So. 3d 435, 440 (La. App. 2011) (citing *Griffin* 776 So. 2d at 1231).

The complaint makes bare assertions that the City was negligent in hiring officers in general and that they should have known that Galman and Sutton were unfit and dangerous, in particular, because they have a "propensity for physical aggressive behavior and/or racist, nativist, or xenophobic conduct."[42] There are no facts alleged demonstrating that any action Galman and Sutton took against Gomez was done in the performance of their duties as NOPD officers. Also, there are no facts showing that either Galman or Sutton has a history of violence or other objectionable conduct of which the City should have been aware. There are some bald allegations that Galman was the subject of two prior internal affairs investigations, but there is no information regarding what those prior infractions were or how they were harbingers of the incident at issue. Thus, Gomez has not stated a state-law claim against the City for negligent hiring, retention, or supervision.

C. *Respondeat Superior*

Gomez seeks to hold the City vicariously liable for Galman and Sutton's alleged intentional torts of assault, battery, and false arrest.[43] Under the theory of *respondeat superior* "employers are answerable for the damage occasioned by their [employees], in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. "[F]or an employer to be vicariously liable for the tortious acts of its employee the tortious conduct of the employee must

---

[42] *Id.* at 12-13.
[43] *Id.* at 13.

15

be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996) (internal quotation marks and brackets omitted). "Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Id.* (quotation marks and citation omitted).

Gomez alleges that Galman and Sutton were acting within the course and scope of their employment, but there are no facts alleged to support that assertion. It is undisputed that at the time of the incident, Galman and Sutton were off duty and drinking at a bar. There is no indication that they were in their NOPD uniforms or identified themselves as police officers. There are no facts in the complaint demonstrating that Galman and Sutton were acting within the ambit of their assigned duties in furtherance of the NOPD's crime-fighting or peace-keeping objective at the time the incident occurred. *See Duffour*, 2013 WL 5673605, at *5 (fact that officer was off duty when he intentionally assaulted plaintiff at a bar "undermines any naked claim that [the officer] was somehow acting in the course and scope of his employment" with NOPD when he assaulted plaintiff at a bar); *Cruz*, 2016 WL 4543613, at *9 (City was not vicariously liable when off-duty officer, who was dressed in plain clothes and driving a personal vehicle, and did not identify himself as a police officer, assaulted and battered an individual with whom he was in a traffic accident); *Barnes v. McQueen*, 2016 WL 866710, at *15 (E.D. La. Mar. 7, 2016) (city not vicariously liable when off-duty officer, who was not in uniform, attacked his wife's ex-husband); *Russell v. Noullete*, 721 So. 2d 868, 872-74 (La. 1998) (off-duty officer, not in uniform, was not acting in course and scope of his employment when he assaulted a bystander

and shot into a crowd). Thus, Gomez has not stated a claim for the City's vicarious liability for Galman and Sutton's alleged intentional torts.

### D. Intentional Infliction of Emotional Distress

To prove intentional infliction of emotional distress in Louisiana, a plaintiff must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

Gomez does not sufficiently allege a claim for intentional infliction of emotional distress against the City. The complaint alleges that Galman and Sutton beat Gomez, but there are no factual allegations supporting the notion that the City engaged in any outrageous conduct with the desire to inflict emotional distress or knowledge that it would be substantially certain to result from its conduct. The bare allegation that the City protects its police officers through the "blue code of silence" is insufficient and contrary to actual developments in the case, including specifically the NOPD's action in arresting Galman and Sutton on the day of the incident and immediately terminating their employment. Further, there are no factual allegations in the complaint as would show that the City knew that its hiring and training practices would result in the infliction of emotional distress.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Gomez has fourteen (14) days from the date of this Order & Reasons to seek leave of court to file an amended complaint curing the deficiencies addressed herein.[44]

IT IS FURTHER ORDERED that if Gomez fails to cure the pleading deficiencies in the allotted time, the City's motion to dismiss (R. Doc. 17) will be GRANTED, dismissing Gomez's claims against the City brought under § 1983 (Count I), and under Louisiana law for intentional infliction of emotional distress (Count IV), negligent hiring (Count V), negligent retention and supervision (Count VI), and vicarious liability (Count VII).

New Orleans, Louisiana, this 30th day of December, 2019.

*[signature]*

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[44] Rule 15 allows a court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has recognized that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of the pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002).