UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JORGE GOMEZ | CIVIL ACTION |
| VERSUS | NO. 19-11803 |
| THE CITY OF NEW ORLEANS, JOHN GALMAN, and SPENCER SUTTON | SECTION M (1) |

## ORDER & REASONS

This matter is before the Court on a motion by the City of New Orleans (the "City) to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure certain claims raised in plaintiff's amended complaint.[1] Plaintiff Jorge Gomez responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the City's motion dismissing Gomez's claims against the City for civil rights violations brought under 42 U.S.C. § 1983 and his Louisiana state-law claims for negligent hiring, retention, and supervision; *respondeat superior* for John Galman and Spencer Sutton's alleged intentional torts of assault, battery, and false arrest; and intentional infliction of emotional distress.

I.  BACKGROUND

This matter concerns an incident at a bar instigated by defendants Galman and Sutton, who were both off-duty New Orleans Police Department ("NOPD") officers. On July 23, 2018, Gomez, a United States military veteran of Honduran descent, went to the Mid-City Yacht Club in New Orleans dressed in military fatigues and a Honduran green beret.[3] Gomez was sitting at the bar when Galman and Sutton entered the establishment and began bullying him about his

---

[1] R. Doc. 38. Plaintiff's claims against the off-duty police officers are not the subject of this motion and remain in place.
[2] R. Doc. 45.
[3] R. Doc. 32 at 1-4.

1

ethnicity, heritage, and service.[4] Gomez alleges that Galman and Sutton called him a "fake American" and a liar, and attempted to pull off his clothes.[5] Galman stole Gomez's beret off his head and left the bar.[6] Gomez followed Galman to attempt to retrieve his hat. At that point, Gomez alleges, Sutton turned around and directed Gomez to stop and not leave the bar's patio area.[7] Galman returned to the patio area, dropped Gomez's hat, and then punched Gomez in the face. Sutton joined Galman in beating Gomez.[8] Gomez laid across one of the patio tables until two bystanders intervened to aid him. When Gomez got into his vehicle and attempted to drive away, Galman and Sutton blocked Gomez's path and ordered him to exit the vehicle.[9] Gomez complied, and Galman and Sutton continued to beat him and held his hands behind his back.[10]

Gomez alleges that Galman and Sutton attempted to cover up their conduct by initiating a criminal investigation against him.[11] Galman and Sutton contacted the NOPD dispatch and requested assistance.[12] The responding NOPD officers allowed Galman and Sutton to go home while Gomez was taken to the hospital where he was questioned about the incident.[13] Later that day, Galman and Sutton were arrested, and the NOPD began termination proceedings the next day.[14]

---

[4] *Id.*
[5] *Id.* at 4-5.
[6] *Id.* at 5.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 6.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 6-7.
[14] *Id.* at 7 (alleging that officers were arrested and charged). The Court also takes judicial notice of the NOPD's announcement of Galman's and Sutton's arrests and termination proceedings. Gary S. Sheets, *NOPD Arrests Two Officers for Assault, Begins Termination Proceedings*, NOPD News (July 24, 2018), https://nopdnews.com/post/July-2018/nopd-arrests-two-officers-for-assault,-begins-term/. *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record").

On July 23, 2019, Gomez filed this suit against the City, Galman, and Sutton seeking damages for the physical and mental injuries he sustained as a result of the July 23, 2018 incident.[15] Gomez alleged that Galman and Sutton are liable under 42 U.S.C. § 1983 for violating his rights guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments by engaging in an unlawful stop, detention, arrest, and use of excessive force.[16] Gomez also alleged that Galman and Sutton are liable under Louisiana state law for assault, battery, false arrest, and intentional infliction of emotional distress.[17]

Gomez alleged several claims against the City. First, Gomez alleged that the City is liable under § 1983 for the violation of his First, Fourth, Eighth, and Fourteenth Amendment rights "to be on a public street, to be left alone, to locomotion, to travel, to due process of law, to equal protection of law, to freedom from unreasonable search and seizures, to freedom from excessive force, and to freedom from cruel and unusual punishment."[18] Gomez further alleged that the City's failure to train and supervise NOPD officers contributed to his unlawful stop, detention, and arrest, and the use of excessive force.[19] Gomez also alleged that the City is vicariously liable under Louisiana law for Galman and Sutton's actions, and liable in its own right under Louisiana law for intentional infliction of emotional distress, negligent hiring, retention, and supervision, and violating the public records law.[20]

The City filed a Rule 12(b)(6) motion to dismiss Gomez's § 1983 and state-law claims.[21] This Court granted the motion, but allowed Gomez to file an amended complaint to attempt to

---

[15] R. Doc. 1 at 1-17.
[16] *Id.* at 9-10.
[17] *Id.* at 10-11.
[18] *Id.* at 7-8.
[19] *Id.* at 8.
[20] *Id.* at 11-15.
[21] R. Doc. 17.

address the deficiencies in the original complaint.[22] Gomez filed an amended complaint re-alleging the same facts and claims against the City, Galman, and Sutton, but adding some factual details and allegations concerning the NOPD's consent decree.[23] Thereafter, the City filed the instant motion to dismiss the amended complaint arguing that Gomez still has not adequately pleaded claims for relief under certain of his theories of recovery.[24]

## II. PENDING MOTION

The City argues that Gomez's § 1983 and state-law claims against it fail for lack of supporting factual allegations.[25] The City reiterates that it cannot be held liable on any legal theory Gomez advances because Galman and Sutton were off-duty and acting out of purely personal motives, unconnected to their employment with the NOPD, when the incident occurred. As to the § 1983 claims, the City again contends that the complaint contains conclusory allegations regarding the failure to train and supervise without identifying a specific policy or custom, promulgated by or known to a specific policymaker, that was the moving force behind the alleged constitutional violations.[26] The City argues that, because Gomez does not allege an obvious pattern of similar conduct of which the City should have been aware, there is no causal link between any alleged insufficient hiring and training and Galman and Sutton's off-duty and personally-motivated actions.[27] The City also argues that Gomez cannot rely on the consent decree or the Department of Justice investigation report to support § 1983 liability because they do not point to a pattern of the type of violations involved in this case.[28] Further, the City argues that Gomez has not identified a clear and official policy that directly resulted in Gomez's

---

[22] R. Doc. 23.
[23] R. Doc. 32.
[24] R. Doc. 38.
[25] R. Doc. 38-1. The motion does not address Gomez's public records claim against the City.
[26] *Id.* at 4-9.
[27] *Id.* at 9.
[28] *Id.* at 9-10.

injuries.[29]

As to the state-law claims, the City argues that Gomez did not state a claim for negligent hiring, retention, or supervision because the two prior incidents Gomez cites regarding Galman's service record are not similar to the event at issue.[30] And Gomez does not identify any prior incidents involving Sutton.[31] Finally, the City argues that Gomez cannot maintain his *respondeat superior* clams and intentional infliction of emotional distress claim against the City because he cannot tie the actions of the two off-duty officers to the City.[32]

In opposition, Gomez argues that he has now pleaded sufficient facts to state § 1983 and state-law claims against the City.[33] As to the § 1983 claim, Gomez argues that he can rely on the consent decree to prove that the City had official policies or customs concerning inadequate hiring practices, training, and retention that led to the constitutional violations.[34] Gomez further urges that the City had a custom of protecting officers from their own wrongdoing that led them to feel empowered.[35] Gomez contends that he properly alleged that the NOPD superintendent had knowledge of the alleged unconstitutional hiring, training, supervision, and retention policies delineated in the consent decree and that they were the moving force behind the alleged constitutional violations at issue.[36]

Gomez also argues that he alleged sufficient facts to support his state-law negligent hiring, retention, and supervision claim because he incorporated into his amended complaint the

---

[29] *Id.* at 9-13.
[30] *Id.* at 13-16. The City also argues that this Court should decline to exercise supplemental jurisdiction over Gomez's state-law claims pursuant to 28 U.S.C. § 1367(c)(3) once it dismisses Gomez's § 1983 claim against the City. But because Sutton answered the original complaint, including the § 1983 claim against him, R. Doc. 20, a federal claim remains pending.
[31] R. Doc. 38-1 at 15.
[32] *Id.* at 16-17.
[33] R. Doc. 45.
[34] *Id.* at 2-6.
[35] *Id.* at 8.
[36] *Id.* at 10-14.

independent monitor's report which outlined deficiencies in the NOPD's hiring procedures.[37] According to Gomez, the report found that the NOPD lowered its standards and accepted persons who should not have been officers, including Galman, whose violent tendencies would have been discovered with better hiring practices.[38] As support for this notion, Gomez points to two prior NOPD internal affairs investigations concerning Galman and states that Galman should have been fired if the NOPD had reasonable retention policies.[39] Moreover, Gomez argues that he adequately pleaded a claim for intentional infliction of emotional distress because the City knew or should have known that severe emotional distress would result from vesting Galman with police powers considering his proclivity for violence.[40] Finally, Gomez contends that he adequately alleged that the City is vicariously liable for Galman and Sutton's actions because one of them came to the other's assistance, which is the response the City expects of its police officers, and they used their police powers to arrest Gomez and call for backup.[41]

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does

---

[37] *Id.* at 15-20.
[38] *Id.*
[39] *Id.*
[40] *Id.* at 20-22.
[41] *Id.* at 22-25.

6

not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss

are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Section 1983**

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260

(5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

In *Monell*, the Supreme Court held that a municipality is liable under § 1983 only when the municipality itself caused the constitutional violation at issue. 436 U.S. at 694. To succeed on a *Monell* claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010). "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (internal quotation marks, alterations, and citation omitted).

The first step in alleging and proving a § 1983 claim is that the allegedly unconstitutional actions must have been performed by a person acting under the color of law. 42 U.S.C. § 1983. In ruling on the City's motion to dismiss Gomez's original complaint, this Court held that Gomez failed to allege that Galman and Sutton were acting under the color of law when they beat Gomez at a bar while they were off duty, not wearing their NOPD uniforms, and not otherwise identified as police officers.[42] The Court explained:

> … The Supreme Court has held that "under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States*, 325 U.S. 91, 111 (1945). The "color of law" analysis "does not depend on [an officer's] on- or off-duty status a the time of the alleged violation," but rather, a "court must consider: (1) whether the officer misused or abused his official power, and (2) if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties." *Bustos v. Martini Club Inc.,* 599 F.3d 458, 464-65 (5th Cir. 2010) (internal quotations marks and alterations omitted) (upholding dismissal of § 1983 claim where plaintiff did not allege facts to suggest off-duty officers who assaulted him at a bar misused or abused their official power). "If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law." *Id.* However, "color of law" in § 1983 actions is read broadly to cover situations in which the defendant has power "by

---
[42] R. Doc. 23 at 9-10.

virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

The complaint states that Galman and Sutton were acting under color of law at the time of the incident, but the facts alleged in the complaint do not support that assertion. Notably, Galman and Sutton were off-duty at a bar, and there is no indication that they were in their NOPD uniforms or that they identified themselves as police officers at any point before they called for backup after Gomez was unconscious. There are no allegations that they used their power as police officers to assault Gomez or that there was a nexus to their official duties. In opposition, Gomez claims that one officer came to the other's aid during the incident, but there is no indication that this was in pursuit of official duties rather than to help a friend in a bar fight. Tellingly, there are no allegations of specific actions by either Galman or Sutton that would lead to the conclusion that either was acting as a police officer. *See Duffour v. Guillot*, 2013 WL 5673605, at *1-6 (E.D. La. Oct. 17, 2013) (plaintiff did not allege any "facts to support the legal conclusion that a policy or custom was the moving force behind any constitutional harm" where the plaintiff was assaulted by an off-duty police officer at a bar); *Cruz v. Fulton*, 2016 WL 4543613, at *9-10 (E.D. La. Aug. 31, 2016) (off-duty officer, who was dressed in plain clothes and did not identify himself as a police officer, acted out of "purely personal considerations" when he assaulted and battered an individual with whom he was in a traffic accident). *Compare Smith v. Carruth*, 2017 WL 785345, at *3 (E.D. La. Mar. 1, 2017) (finding that an off-duty police officer acted under color of law when he flashed his police badge, handcuffed, *Mirandized*, and placed his victim under arrest for prostitution before raping her). Instead, Gomez's allegations indicate that Galman and Sutton took no step that would reveal to Gomez that they were acting as police officers as opposed to private citizens or off-duty police officers in their personal capacities.

The Court concludes, then, that, even viewing the allegations in the light most favorable to Gomez, Galman and Sutton were not acting under color of law at the time of the incident.[43]

Although the City did not expressly address the color-of-law analysis in its motion to dismiss the amended complaint[44] (and Gomez assumes that he has sufficiently pleaded this element because the City did not address it),[45] color of law is an essential element of a § 1983 claim that must be examined. *See West v. Atkins*, 487 U.S. at 48. The lack of this element was a

---

[43] *Id.*
[44] R. Doc. 38-1.
[45] R. Doc. 45 at p 6 n.6.

10

primary reason the Court granted the City's original motion to dismiss Gomez's § 1983 claim against the City.⁴⁶ Yet, Gomez has not cured this deficiency with the amended complaint.

In the amended complaint, Gomez alleges in conclusory fashion that Galman and Sutton were acting as police officers during the event,⁴⁷ but these bald allegations do not change the basic and undisputed facts, *viz.,* that Galman and Sutton were off-duty, at a bar, and not in uniform when the incident occurred. Gomez does not allege that they identified themselves as police officers at any point before they called for backup after Gomez was unconscious, and there is still no factual allegation supporting the notion that they used their power as police officers to assault Gomez or that there was a nexus to their official duties. The factual allegations in the amended complaint do not support a claim that Galman and Sutton were acting under the color of law, but rather as private citizens in a bar fight. This conclusion is supported by the cases regarding off-duty police officers that are cited in the excerpt above. Because Gomez has not adequately alleged that Galman and Sutton were acting under the color of law, his § 1983 claim against the City fails, and it is unnecessary to examine the *Monell* factors at length.⁴⁸

---

⁴⁶ R. Doc. 23 at 9-10.

⁴⁷ R. Doc. 32 at 5 ("Defendant Sutton … turned around to Mr. Gomez, and *acting as a police officer*, gave Mr. Gomez a direct order to stop and not leave the patio area of the bar.") & 6 ("Because they *acted like police officers*, Mr. Gomez believed he was not free to leave, and did not leave. … Defendant Officers … placed his hands behind his back in *a police hold* as they were trained to do during an arrest ….") (emphasis added). Importantly, these unadorned and conclusory allegations do not bother to indicate the way in which such actions are said to have signified official police conduct as opposed to the conduct of private citizens or off-duty officers.

⁴⁸ Suffice it to say that, once again, nowhere in the amended complaint "does Gomez couple a particular policy or persistent practice identified in the consent decree with any historical misconduct as would establish deliberate indifference on the part of the City." R. Doc. 23 at 12. Gomez's repeated references to, or quotations from, the consent decree and related reports do not include any mention of inadequate hiring, training, supervision, or retention of police officers having anything to do with problems concerning off-duty conduct, much less bar fights. *See Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) ("A pattern requires similarity, specificity, and sufficiently numerous prior incidents.") (collecting cases holding multiple *similar* incidents insufficient to establish a pattern or practice of constitutional violations). Gomez has simply not alleged the requisite link between instances of problematic conduct identified in the consent decree or reports and the incident at issue. Thus, Gomez has still not adequately alleged the official policy or custom prong of *Monell*.

## C. Negligent Hiring, Retention, and Supervision

Negligent hiring, retention, and supervision are theories of direct liability governed by the duty-risk analysis that applies to all negligence cases arising under Louisiana law. *Cruz*, 2016 WL 4543613, at *10 (citing *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1231 (La. App. 2000)). The duty-risk analysis requires the plaintiff to prove: "duty, breach of duty, cause-in-fact, scope of the liability or protection, and damages." *Id.*; *see also Fowler v. Roberts*, 556 So.2d 1, 4-5 (La. 1989). An employer has a duty to exercise reasonable care in selecting, retaining, and supervising an "employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party." *Cote v. City of Shreveport*, 73 So. 3d 435, 440 (La. App. 2011) (citing *Griffin* 776 So. 2d at 1231).

As with the § 1983 claim, this state-law claim also fails because there are no facts alleged in the amended complaint demonstrating that any action Galman and Sutton took against Gomez was done in the performance of their duties as NOPD officers. Also, there are no facts showing that Sutton has a history of violence or other objectionable conduct of which the City should have been aware. Further, although the amended complaint has added, and Gomez emphasizes in opposition, some allegations that Galman engaged in questionable behavior resulting in two prior internal affairs investigations (one incident in which Galman allegedly strip searched and humiliated an arrestee and another in which he allegedly headbutted a car mirror), there are no facts showing that Galman was acting in the same manner, or within the course and scope of his employment with the NOPD, in his conduct toward Gomez. Other than vague references to violent tendencies, Gomez provides no indication in the amended complaint of how Galman's prior incidents were harbingers of the incident at issue. Instead, in the Gomez incident, unlike the prior incidents, the facts demonstrate that Galman was acting in a purely private and personal capacity by engaging in a bar fight. Thus, Gomez has not stated a state-law claim against the

City for negligent hiring, retention, or supervision, and such claims are dismissed.

## D. *Respondeat Superior*

Gomez seeks to hold the City vicariously liable for Galman and Sutton's alleged intentional torts of assault, battery, and false arrest.[49] Under the theory of *respondeat superior* "employers are answerable for the damage occasioned by their [employees], in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. "[F]or an employer to be vicariously liable for the tortious acts of its employee the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996) (internal quotation marks and brackets omitted). "Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Id.* (quotation marks and citation omitted).

Again, Gomez alleges that Galman and Sutton were acting within the course and scope of their employment, but there are no facts alleged to support that assertion. The Court previously found it undisputed that, at the time of the incident, Galman and Sutton were off duty and drinking at a bar, they were not in their NOPD uniforms, and they had not identified themselves as police officers. Given these factual circumstances, the Court found that dismissal of the claim Gomez asserted in the original complaint for the City's vicarious liability would be warranted if left uncorrected. Gomez does not allege any facts in the amended complaint to rectify this deficiency of the original complaint or to demonstrate that Galman and Sutton were acting within

---

[49] *Id.* at 13.

the ambit of their assigned duties in furtherance of the NOPD's crime-fighting or peace-keeping objective at the time the incident occurred. *See Duffour*, 2013 WL 5673605, at *5 (fact that officer was off duty when he intentionally assaulted plaintiff at a bar "undermines any naked claim that [the officer] was somehow acting in the course and scope of his employment" with NOPD when he assaulted plaintiff at a bar); *Cruz*, 2016 WL 4543613, at *9 (city was not vicariously liable when off-duty officer, who was dressed in plain clothes and driving a personal vehicle and who did not identify himself as a police officer, assaulted and battered an individual with whom he was in a traffic accident); *Barnes v. McQueen*, 2016 WL 866710, at *15 (E.D. La. Mar. 7, 2016) (city not vicariously liable when off-duty officer, who was not in uniform, attacked his wife's ex-husband); *Russell v. Noullete*, 721 So. 2d 868, 872-74 (La. 1998) (off-duty officer, not in uniform, was not acting in course and scope of his employment when he assaulted a bystander and shot into a crowd). Thus, Gomez has not stated a claim for the City's vicarious liability for Galman and Sutton's alleged intentional torts, and that claim is dismissed.

### E. Intentional Infliction of Emotional Distress

To prove intentional infliction of emotional distress in Louisiana, a plaintiff must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

In his amended complaint, Gomez again fails to allege sufficient facts to support a claim for intentional infliction of emotional distress against the City. The Court previously dismissed this claim because the complaint alleged only that Galman and Sutton beat Gomez, with no factual allegations supporting the notion that the City engaged in any outrageous conduct with the desire to inflict emotional distress or had knowledge that it would be substantially certain to

result from its conduct. Gomez did not fix this pleading deficiency in the amended complaint. The conclusory allegations that the City allowed Galman and Sutton to use their police powers in an improper manner and ratified their actions are insufficient and are still contradicted by actual developments in the case, including specifically the NOPD's action in arresting Galman and Sutton on the very day of the incident and immediately terminating their employment. Therefore, this claim too must be dismissed.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED the City's motion to dismiss (R. Doc. 38) is GRANTED, dismissing with prejudice Gomez's claims against the City brought under § 1983 (Count I), and under Louisiana law for intentional infliction of emotional distress (Count IV), negligent hiring (Count V), negligent retention and supervision (Count VI), and vicarious liability (Count VII).

New Orleans, Louisiana, this 1st day of April, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE