UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JORGE GOMEZ | CIVIL ACTION |
| VERSUS | NO. 19-11803 |
| THE CITY OF NEW ORLEANS, JOHN GALMAN, and SPENCER SUTTON | SECTION M (1) |

### ORDER & REASONS

Before the Court is a motion by plaintiff Jorge Gomez for entry of a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure on this Court's April 1, 2020 Order & Reasons granting a motion by defendant the City of New Orleans ("the City") to dismiss (as to the City) Gomez's claims brought under 42 U.S.C. § 1983 (Count I), and under Louisiana law for intentional infliction of emotional distress (Count IV), negligent hiring (Count V), negligent retention and supervision (Count VI), and vicarious liability (Count VII).[1] The City did not oppose the motion. Having considered Gomez's memorandum, the record, and the applicable law, the Court denies the motion.

I.     BACKGROUND

This matter concerns an incident at a bar instigated by defendants John Galman and Spencer Sutton, who were both off-duty New Orleans Police Department ("NOPD") officers. On July 23, 2018, Gomez, a United States military veteran of Honduran descent, went to the Mid-City Yacht Club in New Orleans dressed in military fatigues and a Honduran green beret.[2] Gomez was sitting at the bar when Galman and Sutton entered the establishment and began

---

[1] R. Doc. 48.
[2] R. Doc. 32 at 1-4.

bullying him about his ethnicity, heritage, and service.[3]  Gomez alleges that Galman and Sutton called him a "fake American" and a liar, and attempted to pull off his clothes.[4]  Galman stole Gomez's beret off his head and left the bar.[5]  Gomez followed Galman to attempt to retrieve his hat.  At that point, Gomez alleges, Sutton turned around and directed Gomez to stop and not leave the bar's patio area.[6]  Galman returned to the patio area, dropped Gomez's hat, and then punched Gomez in the face.  Sutton joined Galman in beating Gomez.[7]  Gomez laid across one of the patio tables until two bystanders intervened to aid him.  When Gomez got into his vehicle and attempted to drive away, Galman and Sutton blocked Gomez's path and ordered him to exit the vehicle.[8]  Gomez complied, and Galman and Sutton continued to beat him and held his hands behind his back.[9]

Gomez alleges that Galman and Sutton attempted to cover up their conduct by initiating a criminal investigation against him.[10]  Galman and Sutton contacted the NOPD dispatch and requested assistance.[11]  The responding NOPD officers allowed Galman and Sutton to go home while Gomez was taken to the hospital where he was questioned about the incident.[12]  Later that day, Galman and Sutton were arrested, and the NOPD began termination proceedings the next day.[13]

---

[3] *Id.*
[4] *Id.* at 4-5.
[5] *Id.* at 5.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 6.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 6-7.
[13] *Id.* at 7 (alleging that officers were arrested and charged).  The Court also takes judicial notice of the NOPD's announcement of Galman's and Sutton's arrests and termination proceedings.  Gary S. Sheets, *NOPD Arrests Two Officers for Assault, Begins Termination Proceedings, NOPD News* (July 24, 2018), https://nopdnews.com/post/July-2018/nopd-arrests-two-officers-for-assault,-begins-term/. *See Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record").

On July 23, 2019, Gomez filed this suit against the City, Galman, and Sutton seeking damages for the physical and mental injuries he sustained as a result of the July 23, 2018 incident.[14] Gomez alleged that Galman and Sutton are liable under 42 U.S.C. § 1983 for violating his rights guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments by engaging in an unlawful stop, detention, arrest, and use of excessive force.[15] Gomez also alleged that Galman and Sutton are liable under Louisiana state law for assault, battery, false arrest, and intentional infliction of emotional distress.[16]

Gomez alleged several claims against the City. First, Gomez alleged that the City is liable under § 1983 for the violation of his First, Fourth, Eighth, and Fourteenth Amendment rights "to be on a public street, to be left alone, to locomotion, to travel, to due process of law, to equal protection of law, to freedom from unreasonable search and seizures, to freedom from excessive force, and to freedom from cruel and unusual punishment."[17] Gomez further alleged that the City's failure to train and supervise NOPD officers contributed to his unlawful stop, detention, and arrest, and the use of excessive force.[18] Gomez also alleged that the City is vicariously liable under Louisiana law for Galman and Sutton's actions, and liable in its own right under Louisiana law for intentional infliction of emotional distress, negligent hiring, retention, and supervision, and violating the public records law.[19]

The City filed a Rule 12(b)(6) motion to dismiss Gomez's § 1983 and state-law claims.[20] This Court granted the motion, but allowed Gomez to file an amended complaint to attempt to

---

[14] R. Doc. 1 at 1-17.
[15] *Id.* at 9-10.
[16] *Id.* at 10-11.
[17] *Id.* at 7-8.
[18] *Id.* at 8.
[19] *Id.* at 11-15.
[20] R. Doc. 17.

address the deficiencies in the original complaint.[21]  Gomez filed an amended complaint re-alleging the same facts and claims against the City, Galman, and Sutton, but adding some factual details and allegations concerning the NOPD's consent decree.[22]

Thereafter, the City filed another motion to dismiss, this one directed to the amended complaint, arguing that Gomez still did not adequately plead claims for relief under certain of his theories of recovery.[23]  On April 1, 2020, this Court granted the City's motion and dismissed with prejudice Gomez's claims against the City brought under § 1983 (Count I), and under Louisiana law for intentional infliction of emotional distress (Count IV), negligent hiring (Count V), negligent retention and supervision (Count VI), and vicarious liability (Count VII).[24]  The following claims remain pending: claims brought against Galman and Sutton under § 1983 (Count II); state-law claims against Galman and Sutton for assault, battery, and false arrest (Count III), and intentional infliction of emotional distress (Count IV); and a claim against the City for violation of the Louisiana public records law (Count VIII).[25]

## II. PENDING MOTION

Gomez seeks the entry of a Rule 54(b) judgment as to his counts against the City that this Court dismissed with prejudice in its April 1, 2020 Order & Reasons.[26]  Gomez argues that the conditions for entry of such a judgment are met because: (1) this case involves multiple claims for relief and multiple parties; (2) this Court dismissed five counts against the City with prejudice; (3) the rights and liabilities of the City in connection with Gomez's injury have been decided; and (4) there is no just reason for delay.[27]  Gomez recognizes that he still has one claim

---

[21] R. Doc. 23.
[22] R. Doc. 32.
[23] R. Doc. 38.
[24] R. Doc. 46.
[25] *See* R. Docs. 46 & 48.
[26] R. Doc. 48.
[27] R. Doc. 48-1 at 2.

pending against the City, but argues that the claim for violation of the public records law (Count VIII) is "separate and apart" from the claims that were dismissed pertaining to the bar fight.[28] Thus, according to Gomez, there is no overlap between the remaining claim and the dismissed claims against the City.[29] In his motion, Gomez does not address the effect of his pending claims against Galman and Sutton.

## II.    LAW & ANALYSIS

Rule 54(b) is an exception to the rule that a final judgment is appealable only after the adjudication of the rights and liabilities of all parties to a proceeding. *Westmoreland v. Venice Marine & Outdoor Consultants, Inc.*, 2018 WL 2124040, at *1 (E.D. La. May 8, 2018). The rule provides in pertinent part:

> When an action presents more than one claim for relief ... or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. …

Fed. R. Civ. P. 54(b). Thus, to certify an otherwise interlocutory order for immediate appeal, a district court must make two separate findings under Rule 54(b): first, the court must determine that the order constitutes a "final judgment" as to one or more "claims or parties"; and second, the court must determine that "there is no just reason for delay."

The Fifth Circuit has explained that Rule 54(b) "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.'" *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (quoting *PYCA Indus. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996)). Rule 54(b) motions are rarely granted because the district court must "take into account judicial administrative interests" to "'preserve[] the historic federal

---

[28] *Id.*
[29] *Id.*

policy against piecemeal appeals.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

As to the first of the two requirements for certification, the district court can certify an order as a Rule 54(b) judgment only if the order has "disposed of 'one or more ... claims or parties.'" *Eldredge*, 207 F.3d at 740 (quoting Fed. R. Civ. P. 54(b)).  A court should look to see whether this requirement is met as to each party or claim because it is jurisdictional.  *Id.* (citing *In re Southeast Banking Corp.*, 69 F.3d 1539, 1548-52 (11th Cir.1995) (finding that a Rule 54(b) final judgment was improperly entered as to certain rulings because they did not dispose of distinct claims, but that it was properly entered as to certain defendants who were completely dismissed)).  Although the Fifth Circuit has not endorsed a preferable method for determining what constitutes a "claim for relief," in *Eldredge*, it applied a factual approach and found that the claims there at issue were not separate because they involved the same facts.  *Id.* at 741-42.

Applying a factual approach to this case, this Court's April 1, 2020 Order & Reasons did not dispose of distinct "claims for relief."  The incident at the bar was the factual underpinning of all of the counts against the City that were dismissed.  These very same facts underlie all of the claims pending against Galman and Sutton.  Thus, this Court has not finally disposed of those claims and entering a Rule 54(b) judgment would not serve the goal of preventing piecemeal appeals.  Moreover, the Fifth Circuit (perhaps through different panels) would have to learn and then relearn the same set of facts if faced with the appeal sought here and a later appeal concerning Gomez's claims against Galman and Sutton.  *See id.* (factual overlap would require consideration of the same facts in successive appeals).[30]

---

[30] In addition, this Court's April 1, 2020 Order & Reasons did not completely dismiss any party since the public-records claim against the City remains pending.

As to the second requirement for a Rule 54(b) certification, Gomez has not demonstrated that an immediate appeal would avoid the dangers of hardship or injustice. *PCYA*, 81 F.3d at 1421 (under "no just reason for delay" requirement, "[a] district court should grant certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; it should not be entered routinely as a courtesy to counsel"). Gomez merely pronounces, without explanation, that there is no just reason for delay. This bald assertion does not suffice. Gomez has not even attempted to explain any hardship or injustice that would result to him or anyone else from continuing the litigation to its ultimate conclusion in the district court before lodging an appeal. Without more, then, this Court cannot heed its obligation to preserve the historic federal policy against piecemeal appeals and also certify that there is no just reason for delay, even when the request for Rule 54(b) certification is unopposed. *See Westmoreland*, 2018 WL 1214040, at *2.

### III. CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Gomez's motion for entry of a Rule 54(b) judgment (R. Doc. 48) is DENIED.

New Orleans, Louisiana, this 15th day of May, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE