UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JORGE GOMEZ                                              CIVIL ACTION

VERSUS                                                   NO. 19-11803

THE CITY OF NEW ORLEANS, *et al.*                        SECTION M (1)

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by the City of New Orleans (the "City").[1] Plaintiff Jorge Gomez responds in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion.

**I.     BACKGROUND**[3]

This matter arises out of a violent altercation between Gomez and two off-duty New Orleans Police Department ("NOPD") officers, defendants John Galman and Spencer Sutton. On July 23, 2018, while at a bar in New Orleans, Gomez got into a fight with Galman and Sutton and was severely beaten after leaving the bar. Gomez was taken to a hospital for his injuries and, the next day, Galman and Sutton were detained and investigated for the attack and then fired by the NOPD.[4] As a result of the incident, Gomez brought various claims under state and federal law against Galman, Sutton, and the City.[5] At this stage of the litigation, as concerns the City, only

---

[1] R. Doc. 103.
[2] R. Doc. 105.
[3] A more complete recitation of the facts can be found in the Court's April 1, 2020 Order & Reasons. R. Doc. 46.
[4] R. Docs. 103-4 at 8 (deposition of Galman); 103-5 at 1-2 (Galman and Sutton termination letters).
[5] *See* R. Docs. 1; 32.

Gomez's state-law claims for negligent hiring, retention, and supervision of Galman and Sutton and for violation of the public records law remain pending.[6]

## II. PENDING MOTION

In its motion, the City argues that Gomez's claim for negligent hiring, retention, and supervision fails as a matter of law because the City is immune from liability under Louisiana Revised Statute 9:2798.1, which grants immunity to public entities for harms resulting from certain discretionary or policymaking decisions.[7] The City asserts that "Louisiana and federal courts applying Louisiana law have interpreted La. R.S. 9:2798.1 to render public entities immune from liability for state-law claims for negligent training, hiring, supervision, and retention."[8] Because Gomez cannot establish a genuine dispute of material fact as to the applicability of the immunity established in La. R.S. 9:2798.1, and because no facts exist implicating either of the statutory exceptions to such immunity, the City concludes that Gomez's negligent hiring, retention, and supervision claim fails as a matter of law.[9]

In opposition, Gomez argues that the City's decisions regarding the hiring, retention, and supervision of Galman and Sutton were operational in nature – as opposed to policymaking or discretionary – and so the immunity afforded by La. R.S. 9:2798.1 does not apply.[10] Gomez asserts that the City's entitlement to immunity under La. R.S. 9:2798.1 is limited to decisions that are "'based on social, economic, or political concerns.'"[11] But, says Gomez, the City's decisions with respect to Galman were not based on such considerations, because the City continued to employ

---

[6] *See* R. Docs. 46 at 4 n.25; 58 at 3; 71-1 at 16. Gomez's remaining claims against Galman and Sutton are not the subject of the instant motion. R. Doc. 71-1 at 16.

[7] R. Docs. 103 at 1; 103-1 at 7-10. Gomez observes, and the Court agrees, that the City only seeks dismissal of his negligent hiring, supervision, and training claim because it is barred by statutory immunity. In other words, Gomez's claim for violation of the public records law is also not the subject of the instant motion.

[8] R. Doc. 103-1 at 8.

[9] *Id.* at 8-9.

[10] R. Doc. 105 at 4-8.

[11] *Id.* at 5 (quoting *Herbert v. Adcock*, 55 So. 3d 1007, 1013 (La. App. 2011)).

him "despite knowing of his pattern of misconduct and his abuse of police powers."[12] Alternatively, Gomez contends that even if the immunity provisions of La. R.S. 9:2798.1 apply, his claims are not barred because the City's decisions with respect to hiring, retaining, and supervising Galman were "intentional, reckless, or outrageous," which is an exception to immunity under the statute.[13]

### III.   LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a

---

[12] *Id.*
[13] *Id.* at 9-10.

rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could

support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Immunity Under La. R.S. 9:2798.1

The City submits that it is entitled to immunity under La. R.S. 9:2798.1, which provides in pertinent part:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

La. R.S. 9:2798.1(B). However, immunity does not apply "(1) [t]o acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) [t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." *Id.* 9:2798.1(C). Louisiana courts have devised a two-step inquiry for determining whether the statute's policymaking or discretionary acts immunity applies to a given set of facts. First, a court must look to whether a statute, policy, or regulation required the government employee to follow the particular course of conduct at issue. *Aucoin v. Larpenter*, 324 So. 3d 626, 637 (La. App. 2021). If so, then the act or omission did not involve discretion and the immunity provisions of La. R.S. 9:2798.1 do not apply. *Id.* Second, if the act or omission did involve discretion, "the court must then determine whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic or political policy." *Id.* at 637-38. "In other words, when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures." *Id.* at 638; *see also Gregor v. Argenot Great Cent. Ins. Co.*, 851 So. 2d 959, 968 (La. 2003) (same); *Dominique v. St. Tammany Parish*, 313 So. 3d 307, 315 (La. App. 2020) (same). Governmental actions unrelated to public policy considerations are commonly


referred to as "operational," as opposed to discretionary, and thus do not implicate discretionary acts immunity under the statute. *See, e.g.*, *Aucoin*, 324 So. 3d at 638 ("The immunity statute does not protect operational governmental decisions, but only confers immunity for discretionary decisions based on social, economic, or political concerns."); *Dominique*, 313 So. 3d at 315 (same); *Sauceberry v. Webre*, 2017 WL 1788096, at *4 (La. App. May 5, 2017) (same); *Gregor*, 851 So. 2d at 968 (holding that governmental action at issue was "operational negligence" where "the government act[ed] negligently for reasons unrelated to public policy consideration").

Discretionary immunity under La. R.S. 9:2798.1 is an affirmative defense and, as such, the party raising it bears the initial burden of demonstrating its applicability. *See Dominique*, 313 So. 3d at 314; *Mercadel v. State through Dep't of Pub. Safety & Corr.*, 2019 WL 2234404, at *5 (La. App. May 15, 2019); *Sauceberry*, 2017 WL 1788096, at *4. "If the defendant establishes entitlement to immunity, the burden shifts to the plaintiffs to show there is conduct that would except the defendant[] from liability." *Dominique*, 313 So. 3d at 314 n.6. Under Louisiana law, "[i]mmunity statutes are strictly construed against the party claiming immunity." *Id.* at 314.

## C. Whether La. R.S. 9:2798.1 Applies

Here, the City argues that La. R.S. 9:2798.1 immunizes it "from liability for state-law claims for negligent training, hiring, supervision, and retention" because such decisions "are grounded in policy considerations."[14] But public entities do not enjoy such categorical immunity under Louisiana law, and the cases cited by the City do not compel a contrary conclusion.[15] Rather,

---

[14] R. Doc. 103-1 at 8.
[15] For example, in *Smith v. Lafayette Parish Sheriff's Department*, 874 So. 2d 863, 867-68 (La. App. 2004), the court found that La. R.S. 9:2798.1 shielded the sheriff's department from liability for the actions of one of its deputies. There, the plaintiff argued that the department should have used "polygraph examinations and psychological testing" as part of its hiring and retention practices and, had it done so, the deputy would have been relieved from duty. *Id.* at 867. The court found that the sheriff had "established a hiring/retention policy when he took office" and that he "followed the policy when [the deputy] applied to retain his position." *Id.* at 868. Critically, the deputy's "performance reviews were all favorable, and many rated his work very high." *Id.* at 867. Thus, because the sheriff did not deviate from the policy he adopted, the court held that the "hiring/retention policy was a discretionary act,"

"when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures." *Aucoin*, 324 So. 3d at 637.  Stated differently, "'once a discretionary decision is made, the government entity is not protected from liability for conduct in carrying out the discretionary decision.'" *Populis v. State Dep't of Transp. & Dev.*, 222 So. 3d 975, 981 (La. App. 2017) (quoting *Banks v. Par. of Jefferson*, 108 So. 3d 1208, 1214 (La. App. 2013)).  Thus, although a public entity in certain circumstances might enjoy immunity from liability for harm arising out of its discretionary hiring, retention, and supervision decisions, *see Smith*, 874 So. 2d at 867-68, La. R.S. 9:2798.1 does not shield a governmental actor when it implements such decisions in a negligent fashion.

Having dispensed with the City's argument that public entities are categorically shielded from liability by operation of La. R.S. 9:2798.1 for conduct in carrying out hiring, retention, and supervision decisions, the Court next turns to the substance of the City's assertion that the statute applies in this context.  On this point, the City simply argues that "Gomez is unable to establish a genuine issue of material fact as to how the actions of the City rose to such a level as to make the state-granted immunity inapplicable."[16]  However, in making this argument, the City fundamentally misapprehends its burden at this stage, because it must first demonstrate entitlement to immunity under the statute before the burden of showing its inapplicability shifts to Gomez.  This could have been accomplished, for example, by offering facts indicating that the City's decision to retain Galman was rooted in some social, economic, or political concern.  But the City

---

and that statutory immunity applied. *Id.* at 868. Similarly, in *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005), the court concluded that the police chief's training decisions were "grounded in policy considerations," and so discretionary immunity applied. Importantly, however, the court there observed that the plaintiffs had "not provided sufficient evidence" of the police chief's failure to train the officer in question. *Id.* at 292. The plaintiffs in the remaining cases cited by the City also suffered from an inability to show that the actions taken by the governmental entities in question were somehow deficient. *See Skinner v. Ard*, 519 F. Supp. 3d 301, 320-21 (M.D. La. 2021); *Hoffpauir v. Colum. Cas. Co.*, 2013 WL 5934699, at *13 (M.D. La. Nov. 5, 2013).

[16] R. Doc. 103-1 at 8.

7

fails even to attempt such an argument, opting to conclude flatly that Gomez cannot show the statute's inapplicability.  Nevertheless, even if the City had carried its initial burden, Gomez raises issues of fact as to whether the City's decisions were based on operational negligence – rather than public policy considerations – such that summary judgment on the basis of discretionary immunity would be improper.

On this point, Gomez argues "that the City was negligent in training, supervising, and retaining Officer Galman despite knowing of his pattern of misconduct and his abuse of police powers."[17]  In support, Gomez submits facts tending to show that, while Galman was still a probationary officer with the NOPD and *before* his altercation with Gomez (which occurred on July 23, 2018), the NOPD twice investigated him for misconduct.  The first investigation arose out of an incident that occurred on March 30, 2018, which involved "a pedestrian stop of a subject possibly wanted for bicycle theft."[18]  As a result of the investigation, the NOPD concluded that Galman committed a host of rules violations because he (1) used profane language during the citizen encounter, (2) attempted to use an unauthorized "drive stun" technique with his taser on the detainee, (3) performed an unauthorized strip search of the detainee in public, and (4) failed to prepare a written report in connection with the search.[19]  The NOPD also found Galman's recollection of events to be "less credible" than the investigating officer's version.[20]  No formal disciplinary action was taken against Galman pursuant to the report's findings, though, because the report itself was not completed until August 23, 2018 – nearly five months after the subject incident and a month after Galman had been terminated due to the encounter with Gomez.[21]

---

[17] R. Doc. 105 at 5.
[18] R. Doc. 105-5 at 2.
[19] R. Docs. 105-5 at 15; 105-6 at 2-3; 105-7 at 2; 105-8 at 2-3.
[20] R. Doc. 105-5 at 11.
[21] *Id.* at 2, 13-14.  Indeed, the NOPD did not begin the investigation into this incident until June 6, 2018, R. Doc. 105-5 at 2, nearly two months after the March 30, 2018 incident, and did not interview Galman until June 20, 2018. *Id.* at 7.

Nevertheless, Gomez points to evidence indicating that a supervisor had notice of the March 30, 2018 incident as early as April 24, 2018.[22] The second investigation arose out of an incident that occurred less than three months later, on June 7, 2018.[23] There, Galman allegedly "swung his arm" in an effort to intentionally strike a passing vehicle as he was crossing Navarre Avenue in New Orleans.[24] Although the investigation report concluded that "it could not be determined" whether Galman committed any conduct violations due to a lack of independent corroboration of the event,[25] it also found that he was "less credible" than the complainant herself.[26] Similarly, as with the report concerning the March 30, 2018 incident, the report of the investigation into the June 7, 2018 incident concluded that no action was necessary because Galman had already been fired as a result of his conduct with Gomez.[27]

Additionally, in further support of his contention that the City acted negligently with respect to retaining and supervising Galman, Gomez submits evidence showing that the City could have fired Galman immediately after the March 30, 2018 incident because he was still on probationary status as a recruit, but the City failed to do so and could not offer a clear rationale for its inaction.[28] Gomez also offers body camera footage from the night Galman and Sutton beat Gomez, in which Galman remarks to a responding officer (who had just informed Galman that the NOPD would likely be investigating the incident) that this encounter was "just like my last one so I'm not going to worry about it."[29] In sum, then, Gomez has provided facts tending to show that

---

[22] R. Doc. 105-7 at 2.
[23] R. Doc. 105-10 at 2.  The investigation of this incident commenced the same day as the incident.  *Id.*
[24] *Id.*
[25] R. Doc. 105-10 at 9.
[26] *Id.* at 7.
[27] *Id.* at 8.
[28] R. Doc. 105-14 at 13-15.
[29] R. Doc. 105-17 (manual attachment exhibit 4, body camera video footage from July 24, 2018).

the City had notice of Galman's misconduct but failed to take corrective action before he and Sutton got into the fight with Gomez.

Thus, even assuming that the City has satisfied its initial burden of showing that its decisions with respect to retaining, training, and supervising Galman were based on some social, economic, or political policy, Gomez has produced summary-judgment evidence of a genuine dispute as to whether the City "act[ed] negligently for reasons unrelated to public policy considerations." *Aucoin*, 324 So. 3d at 637; *see also Populis*, 222 So. 3d at 981 ("[O]nce a discretionary decision is made, the government entity is not protected from liability for conduct in carrying out the discretionary decision."). Consequently, it cannot be said that the City is entitled to judgment as a matter of law, and so its motion for summary judgment must be denied. *See Populis*, 222 So. 3d at 982; *Mercadel*, 2019 WL 2234404, at *5; *Sauceberry*, 2017 WL 1788096, at *5.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the City's motion for summary judgment (R. Doc. 103) is DENIED.

New Orleans, Louisiana, this 5th day of July, 2023.

<div style="text-align: right;">
_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE
</div>