UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JORGE GOMEZ                                          CIVIL ACTION

VERSUS                                              NO. 19-11803

THE CITY OF NEW ORLEANS, *et al.*                    SECTION M (1)

### FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiff Jorge Gomez's federal claims under 42 U.S.C. § 1983 against an off-duty police officer for use of excessive force, and Gomez's state-law claims against defendant the City of New Orleans (the "City") for negligent training, supervision, or retention, were tried to a jury over five days from September 11-15, 2023.[1]  Following the jury's verdict on these claims,[2] the Court established a briefing schedule to address Gomez's remaining claims – brought under the Louisiana public records law – which were to be tried to the Court, not the jury.[3]  The parties have now briefed these remaining claims.  Thus, before the Court is Gomez's brief filed in support of his claims for civil penalties, actual damages, and attorney's fees and costs for the City's alleged violations of the Louisiana public records law.[4]  The City filed a brief in opposition,[5] and Gomez replied in further support of his position.[6]  Having considered the parties' briefs, the submitted evidence, the record, and the applicable law, the Court issues its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.  To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such, and vice versa.

---

[1] R. Docs. 135; 136; 137; 138; 139.
[2] R. Doc. 141.
[3] R. Doc. 142.  The parties were ordered to reference in their briefs all exhibits and other evidence supporting their respective positions.  *Id.*
[4] R. Doc. 148.
[5] R. Doc. 149.
[6] R. Doc. 152.

## I.    FINDINGS OF FACT

This matter arises from a violent altercation between Gomez and two off-duty New Orleans Police Department ("NOPD") officers, defendants John Galman and Spencer Sutton, at a bar in New Orleans on July 23, 2018.[7]  Gomez suffered serious injuries in the altercation and was taken to a hospital that night.[8]  The following day, upon investigation by the Public Integrity Bureau (the "PIB"), Galman and Sutton were detained and then terminated by the NOPD.[9]  Both officers were charged with simple battery.[10]

The next summer, on May 28, 2019, counsel for Gomez sent two letters (together, the "first LPRA request") to the NOPD, via fax and mail, requesting certain documents and information pursuant to the Louisiana Public Records Act (the "LPRA"), La. R.S. 44:1-:41.   The letters requested:

1. Any and all training policies and procedures provided to Officers Spencer Sutton and John Galman concerning discrimination on the basis of race, ethnicity, or national origin.

2. Any and all training policies and procedures provided to Officers Spencer Sutton and John Galman concerning what constitutes inappropriate conduct by an off-duty officer employed by NOPD.

3. Any and all conduct, investigative, and disciplinary reports on Officers Spencer Sutton and John Galman, including any and all suspension and termination records.

4. Any and all reports, and/or video footage of Officers J. Vargas and A. Taylor from July 24, 2018 interview/Spanish translation of Jorge Gomez.

5. Any and all reports, and/or video footage of a home interview of Jorge Gomez on July 26, 2018, conducted by Lieutenant Darryl Watson, and PIB Paloma Miller (certified Spanish interpreter).

---

[7] Testimony of Jorge Gomez, John Galman; Exhibits 4, 5.

[8] Testimony of Gomez.

[9] Testimony of Galman, Julie Jacobs; Exhibits 11, 35.  The Court also takes judicial notice of the NOPD's announcement of Galman's and Sutton's arrests and termination proceedings.  Gary S. Sheets, *NOPD Arrests Two Officers for Assault, Begins Termination Proceedings, NOPD News* (July 24, 2018), https://nopdnews.com/post/July-2018/nopd-arrests-two-officers-for-assault,-begins-term/.

[10] Exhibit 35.

6. Incident reports for Officers Spencer Sutton and John Galman (Incident #G29315-18 Juvenile Custodial Release Form) taken on July 24, 2018.

7. Any and all behavioral evaluations of Officers Spencer Sutton and John Galman conducted during their employment with the NOPD.[11]

The City (through the NOPD) received the request sometime between May 29 and June 3, 2019,[12] and responded on June 12, 2019, stating that it would need "some time" to process the request due to "high volume."[13]   The City advised that it would notify counsel for Gomez of the availability of the records once compiled, providing an initial estimated date of availability but indicating that the estimated date may be adjusted.[14]   The City later extended its estimated completion date twice.

On July 23, 2019, Gomez filed suit against the City and both officers, alleging various claims under state and federal law, including a state-law claim against the City for violation of the public records law.[15]   Gomez alleged that the City violated the LPRA by not responding to his request within the statutorily mandated three-day window.[16]

---

[11] Exhibit 41 at 1, 4.

[12] *See id.* at 2-3, 5-6, 7.  The evidence shows that the NOPD received one fax on May 29, 2019, *id.* at 2-3, and the other on May 30, 2019.  *Id.* at 5-6.  It then received one letter, via mail, on June 3, 2019.  *Id.* at 7.

[13] R. Docs. 32 at 16; 149 at 6.

[14] R. Doc. 149 at 6.

[15] R. Docs. 1; 32.  Regarding the officers, Gomez alleged a violation of his constitutional rights under 42 U.S.C. § 1983, as well as various state-law claims including assault, battery, false arrest, and intentional infliction of emotional distress.  R. Doc. 32 at 20-23.  Against the City, Gomez alleged a § 1983 claim for failure to hire, train, supervise, or discipline officers, as well as various state-law claims including negligent hiring, negligent supervision and retention, vicarious liability, and intentional infliction of emotional distress.  *Id.* at 23-29.  Gomez's § 1983 claim against the City and state-law claims against the officers were dismissed, *see* R. Doc. 46; *Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021), and Gomez subsequently dismissed all remaining claims against Sutton voluntarily.  R. Doc. 131.  Gomez's remaining claims – his § 1983 claims against Galman and negligence claims against the City – proceeded to trial.  At trial, the jury found in favor of the defendants on all claims.  *See* R. Doc. 141.  Accordingly, at this stage of the litigation, the public records claims are the only claims remaining.

[16] At the time of the request, La. R.S. 44:32(D) provided a three-day response period, excluding Saturdays, Sundays, and legal public holidays, in instances where a question is raised as to the producibility of a public record.  This response period was expanded to five days in 2022.  *See* 2022 La. Acts No. 770, § 1.  While Gomez's complaint references the five-day period, the three-day period is applicable here because that was the delay period in place at the time the requests were made.

Three days later, on July 26, 2019, the City produced records responsive to Gomez's request.[17]  Attached to the records was a letter stating which records were produced and explaining why some of the records could not be produced.[18]  With regard to the first two items requested, the City explained that the NOPD's policies and procedures are available online and provided a link to the website.[19]  The City also produced spreadsheets showing the classes each officer attended while training with the NOPD.[20]  As to the third item, the City produced the PIB short forms for both officers but explained that the full PIB investigation file was exempt from disclosure as "records pertaining to pending criminal litigation" under section 44:3(A)(1), since "[t]he criminal litigation involving this incident has not been 'finally adjudicated or otherwise settled.'"[21] The City also stated that items four and five were exempt from disclosure as records pertaining to a pending criminal litigation that had not been finally adjudicated or settled,[22] and it informed Gomez that it had "no responsive records" to the sixth item requested – the incident reports for both officers.[23]  Lastly, the City stated that it could not produce the seventh item requested because behavioral evaluations of NOPD officers conducted during their employment are exempt from disclosure under section 44:11.[24]

On August 12, 2019, counsel for Gomez sent another request (the "second LPRA request") to the City, seeking:

---

[17] Exhibit 41 at 9-789.
[18] *Id.* at 9.
[19] *Id.*
[20] *Id.*
[21] *Id.* (quoting La. R.S. 44:3(A)(1)).  The City explains that a PIB short form "provides information on investigations of rule violations that an officer was subjected to during their employment," including "whether the alleged rule violations were sustained or not sustained."  R. Doc. 149 at 7 n.20.  Gomez sometimes refers to these same documents as "short form versions of the complaint histories" for the NOPD officers.  *See, e.g.*, R. Doc. 148 at 2.
[22] Exhibit 41 at 9.
[23] *Id.*
[24] *Id.*

1.  Any and all conduct, investigative, and disciplinary reports on Officers Spencer Sutton and John Galman, including any and all suspension and termination records;

2.  Any and all reports, and/or video footage of Officers J. Vargas and A. Taylor from July 24, 2018 interview/Spanish translation of Jorge Gomez; and

3.  Any and all reports, and/or video footage of a home interview of Jorge Gomez on July 26, 2018, conducted by Lieutenant Darryl Watson, and PIB Paloma Miller (certified Spanish interpreter).[25]

The City received the request via fax on August 13, 2019, and responded that same day.[26]  It informed Gomez that it received his request and had forwarded it to the NOPD, which would determine whether responsive records exist, and if so, compile the records for his review.[27]  The estimated completion date was originally said to be August 16, 2019, but was subsequently changed to August 30, then September 13, and finally September 18.[28]  On September 19, 2019, the City produced records responsive to the first item requested but explained again that the second and third items were exempt from disclosure because they pertained to pending criminal litigation, again citing section 44:3(A)(1).[29]

On Thursday, October 17, 2019, counsel for Gomez sent another request (the "third LPRA request") to the City, again seeking any reports or videos of Gomez's July 24, 2018 hospital interview and his July 26, 2018 home interview.[30]  Gomez stated that the records should be produced because there was no pending criminal litigation.[31]  The request also sought certain exhibits mentioned in, but not attached to, previously received records, including body-worn

---

[25] Exhibit 42 at 1, 5.  These were the same items previously requested as the third, fourth, and fifth items of Gomez's first LPRA request.
[26] *Id.* at 5-7.
[27] *Id.* at 7.
[28] *Id.* at 10-11.
[29] *Id.* at 9-10.
[30] Exhibit 43 at 1.
[31] *Id.*

camera footage from the incident.[32]  The City responded to the request on Monday, October 21, 2019, stating that it received his request and had forwarded it to the NOPD, which would determine whether responsive records exist, and if so, compile the records for his review.[33]  The next day, the City informed Gomez that it was in contact with the Orleans Parish District Attorney to ascertain the current status of the litigation.[34]  Once the City confirmed that the prosecution was complete, it extended the estimated completion date from October 23 to November 1, 2019, and produced certain records on that date.[35]  The City did not, however, produce the videos of Gomez's hospital or home interviews, the PremierOne Report[36] or audio recording of Galman's 911 call, or certain body-worn camera footage from the incident.[37]

On January 3, 2020, counsel for Gomez sent the City a final request (the "fourth LPRA request"), seeking:

1. Reports and/or video footage from the July 24, 2018 interview of Jorge Gomez in the hospital (conducted by Officers Vargas and Taylor)

2. Reports and/or video footage from the July 26, 2018 interview of Jorge Gomez at his home (conducted by Lt. Darryl Watson).

3. The complete personnel file for Officer Sutton.

4. The complete personnel file for Officer Galman.

5. All background checks concerning Officer Sutton.

6. All background checks concerning Officer Galman.

7. All documents pertaining to the hiring of Officer Sutton, including background checks, applications, resumes, references, and all documents completed by or provided to him.

---

[32] *Id.* at 1-4.
[33] *Id.* at 11-12.
[34] *Id.*
[35] *Id.*
[36] The PremierOne Report provides a summary of Galman's 911 call.  *See* R. Doc. 152 at 1-2.
[37] *See generally* Exhibit 43 at 11-12; R. Doc. 148 at 9.

8. All documents pertaining to the hiring of Officer Galman, including background checks, applications, resumes, references, and all documents completed by or provided to him.[38]

The City responded to the fourth LPRA request on January 6, 2020, explaining that it had been the victim of a cyberattack and could not access the information or provide an estimated date of completion.[39]  Nonetheless, it stated that complete personnel files and background checks are exempt from disclosure under the public records law, and that personnel files are further protected "by one's constitutional right to privacy."[40]  Again, the City did not address the two requested interviews, and Gomez did not receive an updated response when the City regained access to the network.  On January 28, 2020, Gomez amended his complaint to add claims regarding his second, third, and fourth LPRA requests.[41]

The claims specifically tied to the July 23, 2018 altercation proceeded to trial on September 11, 2023, leaving unresolved only the public records claims.[42]  Following trial, the Court entered a briefing schedule to try the public records claims on submissions of the parties.  With respect to these claims, Gomez seeks actual damages for (1) the City's failure to provide any responsive documents to the first LPRA request until July 26, 2019, and (2) the City's failure to produce (through the LPRA process) the PremierOne Report or audio recording of Galman's 911 call, or the body-worn camera footage of Officers Taylor and Garcia-Vargas.[43]  He seeks civil penalties for (1) the lapse of time between May 28, 2019, and June 24, 2019, when the City did not respond to his first LPRA request in any manner; (2) the time between May 28, 2019, and July 26, 2019, when it produced only limited PIB materials; (3) the time between May 28, 2019, and November

---

[38] Exhibit 44 at 1.
[39] *Id.* at 5-6.
[40] *Id.* at 6 (citing La. Const. arts. XII, § 3 and I, § 5, and *E. Bank Consol. Special Serv. Fire Prot. Dist. v. Crossen*, 892 So. 2d 666, 670 (La. App. 2004)).
[41] R. Doc. 32 at 28-29.
[42] *See supra* note 15.
[43] R. Doc. 148 at 11-13.

1, 2019, when it finally produced the PIB materials; (4) the time between May 28, 2019, and the present for the City's failure to produce the video footage of Gomez's interviews; and (5) the time between May 28, 2019, and the present for the City's failure to produce the PremierOne Report and audio recording of Officer Galman's 911 call, and the body-worn camera footage of Officers Taylor and Garcia-Vargas.[44]  Lastly, Gomez seeks attorney's fees and costs for the City's failure to produce (1) the NOPD short-form versions of Galman and Sutton's complaint histories and (2) the requested PIB exhibits, prior to his filing suit.[45]

## II.    CONCLUSIONS OF LAW

### A.  The Louisiana Public Records Act

The LPRA permits any person of the age of majority to inspect or obtain a copy of any public record, except as otherwise provided in the statute.  La. R.S. 44:31(B).  The term "public record" refers to virtually every form of public information or material recorded for use in the performance of a public function, regardless of the media in which it is stored.  *See id.* 44:1(A)(2)(a); *Bacino v. City of Kenner*, 131 So. 3d 283, 285 (La. App. 2013).  However, certain records are not subject to disclosure.  For example, the medical records of public employees, as well as certain identifying information contained in their personnel files, are confidential and may not be disclosed through a public records request.  *See* La. R.S. 44:11.  Additionally, law enforcement agencies are not required to disclose any "records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled."  *Id.* 44:3(A)(1).

After a public records request is made, the custodian – the public official having custody or control of a public record, or a representative specifically authorized by the official to respond

---

[44] *Id.* at 8-11.
[45] *Id.* at 8.

8

to requests – must timely respond to the requestor by: "(1) immediately presenting a public record that is immediately available, or, if not immediately available, certifying such to the requestor and fixing a time within three days[, exclusive of Saturdays, Sundays, and legal public holidays,] for the exercise of the right; (2) notifying the requestor within three days of each request of any question raised by the custodian as to whether a record is a public record; or (3) within five days of each request, providing a written estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of the request." *Par. of Ascension v. Wesley*, 291 So. 3d 730, 735 (La. App. 2019) (citing La. R.S. 44:33(B)(1), :32(D), and :35(A), respectively). Any person who has been denied the right to access a public record "may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages as provided for by this Section, in the district court for the parish in which the office of the custodian is located." La. R.S. 44:35(A). A custodian's failure to respond to a request within five days constitutes such a denial. *Id.*

At the proceeding, the custodian bears the burden of proving that a public record is not subject to inspection, copying, or reproduction. *Id.* 44:31(A)(3). If certain records are found to have been improperly withheld, the Court may enjoin the custodian from withholding those records or issue a writ of mandamus ordering their production. *Id.* 44:35(B). Further, "[i]f a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails on such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof." *Id.* 44:35(D)(1). Regardless, an award for attorney fees "shall not exceed the amounts approved by the attorney general for the

employment of outside counsel."[46] *Id.* 44:35(F).  A court may also award actual damages or civil penalties as follows:

> If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except as hereinafter provided.  In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.

*Id.* 44:35(E)(1).

## B.  Actual Damages

Gomez seeks actual damages for (1) the City's failure to provide any responsive documents to the first LPRA request until July 26, 2019, and (2) the City's failure to ever produce (through the LPRA process) the PremierOne Report or audio recording of Galman's 911 call, or the body-worn camera footage of Officers Taylor and Garcia-Vargas.  As explained above, the Court may only award Gomez "any actual damages proven by him" if it finds that the custodian "arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32."  *Id.* 44:35(E)(1).  "The terms 'arbitrary and capricious' mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case.  However, when there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached."  *Aswell v. Div. of Admin., State*, 196 So. 3d 90, 94 (La. App. 2016) (citing *Toups v. City of Shreveport*, 60 So. 3d 1215, 1217 (La. 2011)).  "The test for determining whether an action was arbitrary or capricious is whether the action taken was 'without

---

[46]  The legislature has capped such fees at $500 per hour.  La. R.S. 42:262(D).

reason.'" *Id.* (quoting *Calcasieu League for Env't Action Now v. Thompson*, 661 So. 2d 143, 150 (La. App. 1995)).

### 1. The City's failure to provide any responsive documents to the first LPRA request until July 26, 2019.

The City received the first LPRA request on May 29, 2023, and the City did not provide responsive documents until almost two months later, on July 26, 2023. Nonetheless, "the Public Records Law recognizes that some reasonable delay may be necessary to comply with records access requests." *Barra v. Boudreaux*, 2020 WL 1695124, at *12 (W.D. La. Apr. 6, 2020).

For example, in *Aswell v. Division of Administration*, the plaintiff sent a request to the Division of Administration of the State of Louisiana (the "DOA") on October 14, 2014, seeking certain requests for proposals ("RFPs"), submitted proposals, the rankings of the RFPs received, the recommendation for awarding the contract, and the contract itself. The DOA acknowledged receipt of the request that same day and estimated that the records would be made available on or before October 31, 2014. *Aswell*, 196 So. 3d at 91-92. The DOA did not produce the records until January 23, 2015, over three months after the request and one week after the requestor filed suit for violation of the public records law. *Id.* at 92. Yet, the trial court concluded, and the appellate court agreed, that the DOA did not violate the public records law. As stated by the appellate court, the request was "very voluminous" and "[t]here was no evidence in the record to prove that the delay was due to anything other than the time required for DOA to complete the requests." *Id.* at 96. The court also concluded that while the records were provided considerably later than the DOA's estimate, the LPRA does not establish a claim for a custodian's failure to provide records within the given estimated period. *Id.*

Here, Gomez's first LPRA request was voluminous. He requested information related to the NOPD's training policies, the investigation into the altercation, the incident reports, the

officers' prior disciplinary reports, Gomez's two interviews, and the officers' behavioral evaluations.  Indeed, Gomez even acknowledged in his complaint that on June 12, 2019, the NOPD advised him "that it would need 'some time' to process the request due to 'high volume.'"[47] Thereafter, Gomez was provided an estimated completion date, which was ultimately extended to July 26, 2019, and the City produced records on that date.[48]  Nothing in the record demonstrates that the less than two-month delay in producing the records was due to anything other than the time required for the City to complete the requests.

Even liberally construing this claim as one for actual damages for the City's initial failure to timely respond at all to the first LPRA request, as opposed to any failure to timely produce records, the claim fails.  Gomez has not offered any evidence of actual damages suffered by him as a result of the City's mere seven-business-day delay in responding to the request on June 12, 2019, rather than on or before June 3, 2019 (three business days after it received the request, at the earliest).  *See, e.g.*, *Stevens v. St. Tammany Par. Gov't*, 264 So. 3d 456, 489 (La. App. 2018) (holding that a requestor was not entitled to an award of actual damages for the parish government's arbitrary failure to timely produce documents in response to a public-records request, since the requestor failed to introduce any evidence to prove that she suffered any actual damages resulting from the parish's actions).  Moreover, it is hard to imagine circumstances in which actual damages might inure in such a short period of time.  Regardless, Gomez has not suggested, much less proven, any.

---

[47] R. Docs. 1 at 14; 32 at 16.
[48] R. Docs. 1 at 14-15; 32 at 16.

**2. The City's failure to ever produce (through the LPRA process) the PremierOne Report and audio recording of Galman's 911 call, or the body-worn camera footage of Officers Taylor and Garcia-Vargas.**

Gomez did not expressly request any 911 calls or body-worn camera footage in the first two LPRA requests. Only through a broad and generous reading might these items be considered responsive as part of the "conduct, investigative, or disciplinary reports" of the officers, which were sought in both requests.[49] In response, the City produced the PIB short forms for each officer but explained that the full PIB investigation files were exempt as records pertaining to pending criminal litigation. At the time of the response to the first LPRA request (July 26, 2019), Galman had already pleaded guilty and been sentenced for his role in the altercation. But Sutton did not plead guilty to his charge until August 7, 2019. Because the 911 call and body-worn camera footage were still part of a "pending criminal litigation" then, the City justifiably denied Gomez access to those records. *See, e.g.*, *Bacino*, 131 So. 3d at 285 (noting with approval the trial judge's observation that "Mr. Bacino was not entitled to anything more than the initial police report when he made his public records request on December 5, 2011, because the matter [a criminal prosecution] was still open when he made his request").

By the time the City received and initially responded to the second LPRA request, on August 13, 2019, Sutton had pleaded guilty, but a criminal litigation is not "finally adjudicated" until the delays provided for filing an appeal have passed. *See Johnson v. Stalder*, 754 So. 2d 246, 249-50 & n.5 (La. App. 1998) ("The law contemplates that a judgment or adjudication against a defendant in a criminal proceeding becomes final when the defendant does not appeal or seek appellate rehearing in an appeal within the delays provided or when rehearing is denied by the

---

[49] But if the requests are confined to a literal reading – and the scope of Gomez's requests thereby limited by the words he actually used to frame them – the City can hardly be faulted for not producing through the LPRA process items Gomez did not expressly request.

supreme court or the appellate court.  In other words, criminal litigation is finally adjudicated when the conviction becomes final.") (citing La. Code Crim. P. arts. 911-913, 921-923, and *Harrison v. Norris*, 569 So. 2d 585, 588-89 (La. App. 1990)).  Because Sutton had 30 days to appeal his conviction or sentence, *see* La. Code Crim. P. art. 914, and *State v. Stinson*, 2008 WL 241558, at *1 (La. App. 2008), the criminal litigation was not "finally adjudicated" until after September 6, 2019.

The City received the request on August 13, 2019 – before the criminal litigation was finally adjudicated – and responded that same day acknowledging receipt of the request and stating that it would determine whether responsive records exist.  It ultimately produced some records on September 19, 2019 – after the criminal litigation was finally adjudicated – but did not produce any reports concerning Galman's 911 call or the body-worn camera footage.  Finally, on October 17, 2019, Gomez specifically requested the camera footage in his third LPRA request,[50] but the City did not provide the footage when it responded to the request on November 1, 2019.[51]

Gomez argues that the actual damages he suffered as a result of the City's failure to timely produce the footage and 911 call in response to his LPRA requests are the attorney's fees and costs he incurred in responding to the City's first motion to dismiss, amending his complaint, responding to the City's second motion to dismiss, and appealing the Court's dismissal of his claims.  Gomez contends that he would have prevailed on the second motion to dismiss had he been given access to these records, which would have obviated his need to appeal this Court's order of dismissal.  Gomez's contention fails at multiple levels.  First, this contention ignores the fact that the Court's order of dismissal was affirmed in part on appeal.  That is, the Fifth Circuit affirmed the Court's

---

[50] Even then, however, the third LPRA request does not specifically mention the PremierOne Report.  *See* Exhibit 43 at 1-4.

[51] Later, in January 2022, the City produced to Gomez as part of its discovery responses the body-worn camera footage and the PremierOne Report of the 911 call.  R. Doc. 152 at 8-10.

dismissal of Gomez's *Monell* claim, his vicarious liability claim, and his intentional infliction of emotional distress claim. *See Gomez*, 18 F.4th at 781-82. Gomez does not argue that he would have prevailed on these dismissed claims had he been given access to the unproduced records.[52] Second, Gomez has not begun to establish the causation necessary to establish his speculative, conjectural, and conclusory assertion that, with the PremierOne Report and body camera footage in hand, he would have beat back the dismissal of his § 1983 and state-law negligence claims. The Court's dismissal of the § 1983 claim was bottomed on its determination – which the Fifth Circuit held to be erroneous – that the off-duty police officers had not acted under the color of law. Given the allegations the Court weighed in making its decision to dismiss the § 1983 claim, Gomez points to nothing about the report of the 911 call or body-worn camera footage that would have caused him to amend his allegations in such a way as to *guarantee* a different outcome on the motion to dismiss. To be sure, these items are simply Gomez's evidence for the allegations he did make.[53] And, of course, the items could not properly have been considered in conjunction with weighing a Rule 12(b)(6) motion without converting it into a motion for summary judgment – which was certainly not the standard the Fifth Circuit applied to review the dismissal order. *See Gomez*, 18 F.4th at 775-77. As for the state-law negligence claims, the Fifth Circuit held that the Court erred in its dismissal of these claims by applying the same rationale as it did in dismissing the *Monell*

---

[52] *See* R. Doc. 148 at 12 ("First, the PremierOne Report, the audio recording of Officer Galman's 911 call, and the body worn camera video footage of Officers Taylor and Garcia-Vargas contained significant facts about Officers Galman and Sutton taking police actions, and therefore, acting under color of law during the July 24, 2018 incident with Mr. Gomez and having derived 'unique opportunities' to commit wrongdoing. If the City had not withheld these records, Plaintiff would have prevailed on the motion to dismiss Section 1983 claims against Officers Galman and Sutton. Second, the body worn camera video of Officer Taylor contained the harbinger that the Court found was missing from Plaintiff's negligence claim: Officer Galman's statement that he was not worried about the incident with Mr. Gomez because he was let off for his prior incident. If the City had not withheld the video, Plaintiff would have prevailed on the motion to dismiss the negligence claim against the City.").

[53] *See, e.g.*, R. Doc. 32 at 6, 8-9 (alleging that the officers "effected an arrest," "called for backup in continuing to make an arrest," and "identified themselves to NOPD dispatch as NOPD officers," and that Galman would be given "a pass for his conduct as [NOPD] had done before on at least two prior occasions").

claim. *Id.* at 780.  The Court's error would not have been avoided by reference to the report of the 911 call or the body-worn camera footage because (1) the dismissal was based on Gomez's own allegations, not any evidence; and (2) there is nothing in the report or footage that would have altered the Court's *Monell* analysis (*i.e.*, "requiring Gomez to show an official policy of hiring and retaining unqualified officers," *id.*).  Third, and quite telling, although a Rule 12(b)(6) motion to dismiss involves the application of a different standard of review, it is worth noting that the jury found in favor of the defendants on both the § 1983 and state-law negligence claims remanded for trial despite Gomez's presentation of the 911 call and body-worn camera footage as evidence.  And, fourth, even if Gomez had established an entitlement to actual damages, which he says consists of the attorney's fees and costs he incurred in responding to the two motions to dismiss and pursuing the appeal, he did not submit any evidence to show what they were, *see Williams Law Firm v. Bd. of Supervisors of La. State Univ.*, 878 So. 2d 557, 573-74 (La. App. 2004) (upholding denial of fees and costs on LPRA claim where plaintiff failed to submit any evidence of same), despite having been ordered to do so.  R. Doc. 142 (ordering the parties to reference in their briefs all exhibits and other evidence supporting their respective positions).  On this ground alone, Gomez's claim for actual damages fails.

In sum, Gomez is not entitled to actual damages.

### C.  Civil Penalties

Gomez also seeks civil penalties covering: (1) the lapse of time between May 28, 2019, and June 24, 2019, in the City's response to his first LPRA request; (2) the time between May 28, 2019, and July 26, 2019, when it produced only limited PIB materials; (3) the time between May 28, 2019, and November 1, 2019, when it finally produced all of the PIB materials; (4) the time between May 28, 2019, and the present for the City's failure to produce the video footage of

Gomez's interviews; and (5) the time between May 28, 2019, and the present for the City's failure to produce the PremierOne Report and audio recording of Officer Galman's 911 call, and the body-worn camera footage of Officers Taylor and Garcia-Vargas.  If the Court finds that the City as custodian "unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32," it may award the requestor civil penalties not to exceed $100 per day, exclusive of weekends and legal holidays, for each day the custodian fails to give such notification.  La. R.S. 44:35(E)(1).

### 1. The time between May 28, 2019, and June 24, 2019, when the City did not respond to the first LPRA request in any manner.

At the outset, the Court recognizes that the City initially responded to the first LPRA on June 12, 2019, not June 24, 2019.[54]  That being said, the response was still untimely since it was sent more than three days (excluding weekends and legal holidays) after the City received the request.  Because the response was untimely pursuant to section 44:32, the Court must next determine whether the custodian acted "unreasonably or arbitrarily."

The City fails to give any explanation for its seven-business-day delay in responding to the first LPRA request, instead stating that "Gomez did not suffer an injury due to this de minimus delay."[55]  After all, says the City, when it did respond, it told Gomez it needed more time to comply with the request.  But a civil penalty is not awarded based on the injury suffered by the requestor; it is awarded when a custodian unreasonably fails to timely notify the requestor of the availability of records, advise of an exception for their production, or provide an estimated completion date. Because the City provides no explanation for the delay (however minimal), the Court finds that the City acted unreasonably or arbitrarily in failing to timely respond to Gomez's first LPRA

---

[54] Gomez states in his reply brief that "[d]efendant City claims it provided a response on June 12, 2019, but Plaintiff can find no record it received the purported response."  R. Doc. 152 at 9 n.27.  However, Gomez had previously judicially confessed in his complaint that "on June 12, 2019, the City … advised that it would need 'some time' to process the request due to 'high volume.'"  R. Doc. 32 at 16.

[55] R. Doc. 149 at 13.

request, and awards Gomez the commensurately nominal sum of $105.00, or $15.00 per day for the seven business days of June 3-7 and 10-11, 2019, which excludes intervening Saturdays and Sundays following expiration of the statutory three-day delay (May 29-31, 2019).

**2. The time between May 28, 2019, and July 26, 2019, when the City produced only limited PIB materials.**

On July 26, 2019, the City provided Gomez with the PIB short forms for both officers, but Gomez alleges that he was entitled to the full PIB reports at that time and seeks civil penalties for the City's failure to produce them.  However, "[t]he Public Records Act authorizes a civil penalty in only one instance: when the custodian unreasonably or arbitrarily fails to provide the exemption notice required by Subsection 44:32D.  The Act does not authorize a civil penalty on any other grounds, including the arbitrary or capricious withholding of the requested records." *Roper v. City of Baton Rouge/Par. of E. Baton Rouge*, 244 So. 3d 450, 460, 468 (La. App. 2018) ("An award of civil penalties, being even more restricted, is authorized only when a custodian unreasonably or arbitrarily fails to provide the exemption notice."); *see also Aswell*, 196 So. 3d at 95 ("The trigger for a discretionary award of civil penalties is the failure of the custodian to properly respond to a requester within the three-day statutory period.").  In other words, unlike actual damages, which may be awarded when a custodian withholds requested records *or* fails to respond to a request, civil penalties may only be awarded when a custodian fails to respond to a request.  *See* La. R.S. 44:35(E)(1).

Here, in its response to Gomez's first LPRA request, the City explained that the full PIB reports were exempt from disclosure as records pertaining to pending criminal litigation.  While the full PIB reports were likely exempt from disclosure at that time, the Court need not make such determination.  As stated by one Louisiana appellate court, "[r]egardless of whether the defendants' legal basis set forth in their notice was correct or incorrect, the Louisiana Public

18

Records Act authorizes a penalty only for failing to provide the notification as required by LSA-R.S. 44:32, not for making the wrong determination." *Deshotels v. White*, 226 So. 3d 1211, 1220 (La. App. 2017).   Accordingly, because the City provided the requisite notice of exemption, Gomez is not entitled to civil penalties for the City's failure to produce the full PIB materials in response to his first LPRA request.

### 3.   The time between May 28, 2019, and November 1, 2019, when the City finally produced the PIB exhibits.

Again, civil penalties may only be awarded when a custodian unreasonably or arbitrarily fails to respond to a request, not when the custodian arbitrarily withholds records.   *See* La. R.S. 44:35(E)(1).   As discussed above, the City provided Gomez with the requisite notice concerning the PIB materials on July 26, 2019.   Hence, Gomez is not entitled to civil penalties for the City's failure to produce the full PIB materials themselves before November 1, 2019.

### 4.   The time between May 28, 2019, and the present for the City's failure to produce the video footage from the interviews of Gomez.

Gomez specifically requested, in each of his four LPRA requests, the reports or video footage from his two interviews.   He alleges that he is entitled to civil penalties from the time he sent the first LPRA request through the present because the City never produced these records through the public records request process.   According to Gomez, he eventually received the footage of his hospital interview through the discovery process but never received the footage of his home interview.[56]

---

[56] *See* R. Doc. 152 at 10 n.30.   Gomez does not state when he received the footage.   He states that he received some discovery on either January 3 or January 17, 2022, but he never states that the interview footage was received on that day.   For example, in Gomez's reply brief, he contends that he received the requested body-worn camera footage and information related to Galman's 911 call on January 3, 2022, *id.* at 8, but later states that he received the camera footage and 911 call on January 17, 2022.   *Id.* at 9, 10 n.28.

As explained above, civil penalties may only be awarded when a custodian unreasonably or arbitrarily fails to respond to a request, not when the custodian arbitrarily withholds records. *See* La. R.S. 44:35(E)(1).  In response to the first and second LPRA requests, the City advised Gomez that the interviews were exempt as records pertaining to pending criminal litigation pursuant to section 44:3(A)(1).  Although the criminal litigation was no longer pending by the time the City provided its exemption notice in response to the second LPRA request, a custodian is not liable for civil penalties for making a wrong determination.  *See Deshotels*, 226 So. 3d at 1220. Thus, Gomez is not entitled to civil penalties for the City's failure to produce – in response to his first and second LPRA requests – the reports or footage of the two interviews.

However, with respect to his third and fourth LPRA requests, Gomez's claim for failure to produce may be construed as one for the City's failure to respond, which could entitle Gomez to civil penalties.  In response to the third and fourth LPRA requests, the City did not merely fail to produce the reports or footage of the interviews; it wholly failed to address the items.  The City did not state that it would not produce the records, nor did it state any basis for withholding them. Louisiana courts have held that a requestor is entitled to civil penalties when a custodian fails to inform the requestor that a record is not being produced or explain why a record is not being produced.  *See, e.g.*, *Indep. Wkly., LLC v. Lafayette City Marshal Pope*, 201 So. 3d 951, 961 (La. App. 2016) (upholding imposition of civil penalties where responses, while timely, were "woefully inadequate" to provide notice of an exemption); *Washington v. Cannizzaro*, 317 So. 3d 826, 839 (La. App. 2021) ("[T]he failure to respond that triggers discretionary civil penalties is a failure to 'properly respond.'  While the custodian in *Innocence Project* [*New Orleans v. New Orleans Police Dep't*, 129 So. 3d 668, 675 (La. App. 2013),] completely ignored the requests, in this case, the substance of Appellant's responses, while timely, were of a willful and unreasoning nature,

and were executed absent consideration for and in violation of La. R.S. 44:32.").  Thus, while the City timely responded, in general, to Gomez's third and fourth LPRA requests, it never gave a reason for its withholding these particular records at that time.

Having found that the City failed to timely respond to parts of Gomez's third and fourth LPRA requests, the Court must next determine whether the City acted unreasonably or arbitrarily in doing so.  As the City fails to offer any explanation for its failure to respond to Gomez's request for the interview reports and footage, the Court finds that the City acted unreasonably in failing to comply with the section 44:32(D) notification requirement.  *See, e.g.*, *Collins v. Welborn*, 2013 WL 5206242, at \*5 (La. App. 2013) ("[T]he Clerk did not *ever* respond in writing to Mr. Collins regarding his request for a cost estimate and gave no excuse or explanation for its failure to do so.  Therefore, the trial court found the Clerk to be unreasonable and capricious and awarded penalties in the amount of $500 [*i.e.*, about $2.50 per day].  Mr. Collins is not *entitled* to '$100 per day' for the clerk's failure to provide the cost estimate.  Since the trial court has discretion whether to award civil penalties, we cannot say that the amount the trial court awarded is an abuse of discretion.") (emphasis in original)).  However, Gomez did eventually receive the footage of his hospital interview in January 2022 through the discovery process.  The City says it gave Gomez everything it had (presumably including the home interview), but Gomez insists it was never received.  Gomez could have sought to compel its production through discovery had it felt sufficiently aggrieved by the City's response.  By the same token, Gomez could have availed himself of the summary procedure available under the LPRA to obtain any unproduced document.  He did neither despite the pendency of his public records claims throughout the period at issue here.  As an exercise of its discretion in setting the amount of the penalties due for the City's noncompliance with the notification requirement, the Court takes into account these tactical litigation choices made by

Gomez.  The Court awards Gomez civil penalties in the amount of $8,490.00 for the City's failure to respond to the third and fourth LPRA requests with respect to the interviews, for the period from October 21, 2019 (when the City otherwise responded to the third request) until the end of January 2022 (when at least one of the interviews was produced in discovery).[57]

> 5. **The time between May 28, 2019, and the present for the City's failure to produce the PremierOne Report and audio recording of Officer Galman's 911 call, and the body-worn camera footage of Officers Taylor and Garcia-Vargas.**

As explained above, the City did not explicitly request any 911 calls or body-worn camera footage in the first two LPRA requests, but the Court will assume, for present purposes only, that these items are considered part of the "conduct, investigative, or disciplinary reports" of the officers that were requested.  In response to these requests, the City produced the PIB short forms for each officer but explained that the full PIB investigation files were exempt as records pertaining to pending criminal litigation.  Since civil penalties may only be awarded when a custodian unreasonably or arbitrarily fails to respond to a request, not when the custodian arbitrarily withholds records, Gomez is not entitled to civil penalties for the City's failure to produce Galman's 911 call or the camera footage in response to the first and second LPRA requests.  *See* La. R.S. 44:35(E)(1).

Gomez also requested the body-worn camera footage in his third LPRA request, but the City did not explain why it was withholding the record.  Thus, Gomez's claim for failure to produce may be construed as one for the City's failure to respond, which could entitle Gomez to civil penalties.  Just as with Gomez's interviews, the City timely responded, in general, to Gomez's request, but it did not state its basis for withholding the 911 call or camera footage.  And, again,

---

[57] The amount awarded works out to be about $15.00 per day for the approximately 566 business days involved, *i.e.*, the period of delay exclusive of Saturdays, Sundays, and holidays.  *See Roper*, 244 So. 3d at 466 (affirming district court's award of $4,000.00, or $10.00 per day, in civil penalties for defendant's failure to provide the requestor with the exemption notice).

the City offers no explanation for its failure to adequately respond to the request.  Nevertheless, as explained above, the City eventually produced the report of the 911 call and the footage through discovery in January 2022.  And, again, in the interim, Gomez did not seek to compel the production of these items either pursuant to federal discovery procedure or the LPRA.  In its discretion, the Court awards Gomez another $8,490.00 in civil penalties for the City's failure to respond to this aspect of his LPRA request (which involves roughly the same period of time as concerned the interviews).

### D. Attorney's Fees and Costs

Under the American Rule, a prevailing litigant may not ordinarily recover either attorney's fees or nontaxable litigation expenses or costs from a loser absent a contractual or statutory fee-shifting provision.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257, 260 (1975) (attorney's fees); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (expenses and costs).  The LPRA provides the following statutory fee-shifting provision:

> If a person seeking the right to inspect, copy, or reproduce a record or to receive or obtain a copy or reproduction of a public record prevails in such suit, he shall be awarded reasonable attorney fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof.

La. R.S. 44:35(D)(1).  Here, Gomez seeks attorney's fees and costs for the City's failure to produce (1) the NOPD short-form versions of Galman and Sutton's complaint histories and (2) the requested PIB exhibits, prior to his filing suit.

### 1. For the City's failure to produce the NOPD short-form versions of Galman and Sutton's complaint histories prior to Gomez filing suit.

"The [LPRA] provides no cause of action for a requestor to seek ordinary relief for damages, costs, or attorney fees in situations where a public entity complies, even if untimely, with a public records request *prior* to the filing of any legal proceedings."  *Carolina Biological Supply*

*Co. v. E. Baton Rouge Par. Sch. Bd.*, 202 So. 3d 1121, 1126 (La. App. 2016) (emphasis added).

But "an award of attorney fees is still permissible under Subsection 44:35D if the production

occurred *after* suit was filed." *Roper*, 244 So. 3d at 469 (emphasis added).[58]

Gomez requested the disciplinary reports of both officers in his first LPRA request, which

the City received on May 29, 2019.  The City did not produce the documents until July 26, 2019,

three days *after* Gomez filed suit against the City for failure to comply with the LPRA.  However,

the record shows that the City initially responded to the request on June 12, 2019, albeit untimely,

advising him that it would need some time to process the request due to high volume.  It then

provided him with an estimated completion date, which was later extended on two occasions – the

second of which was to July 26, 2019.[59]  On the given estimated completion date, the City

complied with the request by producing the NOPD short-form versions of the officers' complaint

histories.  In short, Gomez brought suit before allowing the City to comply with the request or the

passage of the estimated completion date.

A similar situation was addressed in *Misita v. St. Tammany Parish Government*, 286 So.

3d 440 (La. App. 2019).  There, the plaintiffs requested certain records from a parish government,

and the parish responded with an estimated completion date of six months due to the number of

records requested.  Only three months into the six-month estimated completion period, the

requestors filed suit against the parish for violation of the public records law, and the parish filed

---

[58] The City contends that no fees and costs are recoverable under the LPRA because Gomez never pursued his claims for summary relief – either mandamus or declaratory judgment – to press for the production of any of the items he believed the City had wrongly withheld.  Thus, according to the City, Gomez cannot be considered a prevailing party in a suit seeking the production of such items, as is required under section 44:35(D)(1) to recover fees and costs.  R. Doc. 149 at 14-17.  The Court need not address the City's contention, however, because Gomez's claim for fees and costs fails in other respects.

[59] Gomez's original complaint states that the City advised Gomez on June 24, 2019, that the request would be completed by July 17, 2019, and that on July 15, 2019, the City extended the completion date from July 17 to July 26, 2019.  R. Doc. 1 at 14-15.  However, these specific dates were removed from Gomez's amended complaint, filed in January of 2020.  *See* R. Doc. 32 at 16.

an exception of no cause of action, which the court sustained.  On appeal, the court acknowledged that while the plaintiffs alleged that "no documents had yet been produced" and that the parish had failed to comply "adequately and timely or at all" with their public records request, "the Parish did in fact respond to plaintiffs' public records request … stating that it would need an estimated six months to collect, examine, review, segregate (if necessary), and redact (if necessary) the records requested." *Id.* at 445.  Thus, on *de novo* review, the appellate court agreed that the plaintiffs failed to state a cause of action under the LPRA.  In doing so, the court noted that the plaintiffs failed to allege "that the six-month period was an unreasonable estimate of the amount of time necessary to comply with the 134 individual requests or an attempt to effectively deny them access to these public records." *Id.* at 446 (emphasis omitted).

Like the plaintiffs in *Misita*, Gomez filed suit against the City before the expiration of the estimated completion date, alleging that the City failed to comply with the LPRA, and Gomez fails to show that the City's six-week estimate for completion was unreasonable. In his complaint, Gomez broadly alleges that the City's actions and inaction with respect to its denying his "statutorily guaranteed access to the public records" were unreasonable,[60] but he fails to provide any support for this conclusion in his briefing or otherwise rebut the City's contention that it required additional time due to the high volume of requests.  *See Johnson v. Broussard*, 118 So. 3d 1249, 1253-55 (La. App. 2013) (holding that requester was entitled to mandamus relief where court found that the custodian's estimate of "weeks and probably months" to pre-screen files to prevent access to confidential information was contradicted by expert testimony that retrieval of the requested information should take no more than four hours).  Gomez argues in his trial brief that the City "unreasonably delayed production of requested records until July 26, 2019, two days

---

[60] R. Doc. 32 at 29.

*after* expiration of the statute of limitation period for Plaintiff's claims."[61]   But he does not say that the delay altered in any respect the claims and allegations made in the complaint Gomez filed. Accordingly, because Gomez has failed to show that the City violated the LPRA by not producing the officers' complaint histories before he filed suit, he is not entitled to recover any attorney's fees or costs for this claim.[62]

### 2.   For the City's failure to produce the requested PIB materials prior to Gomez filing suit.

The PIB reports were requested in Gomez's first three LPRA requests.  In response to the first LPRA request, the City denied Gomez access to the full PIB reports due to the pending criminal litigation.  Because Sutton had not yet pleaded guilty, the City was justified in not disclosing the full PIB reports.  Thus, Gomez is not entitled to attorney's fees with respect to the City's failure to produce the full PIB exhibits in response to the first LPRA request – which was the only one of the four requests that was a subject of Gomez's original complaint.

It is true that the City did not produce the full PIB reports in response to Gomez's second LPRA request on September 19, 2019, but he eventually received them on November 1, 2019, in response to his third LPRA request.[63]   This was almost three months before Gomez amended his complaint to add claims related to his second and third LPRA requests. Thus, because the City complied with the request for the PIB materials before Gomez brought suit concerning these requests, he is not entitled to recover any attorney's fees or costs for this claim. *See Carolina Biological*, 202 So. 3d at 1126.

---

[61] R. Doc. 152 at 4 (emphasis in original).

[62] Moreover, even if Gomez had established an entitlement to recover fees and costs under section 44:35(D)(1), he did not submit any evidence to show what they were, *see Williams Law Firm*, 878 So. 2d at 573-74, despite having been ordered to do so.  R. Doc. 142.  Again, as with Gomez's claim for actual damages, his claim for fees and costs must be denied for this reason alone.

[63] R. Doc. 148 at 8-9.

III.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Gomez is not entitled to an award of actual damages or attorney's fees and costs in this matter.

IT IS FURTHER ORDERED that Gomez is awarded civil penalties in the total amount of $17,085.00 for the City's failure to timely respond to Gomez's first LPRA request, his request for the interviews, and his request for the 911 call materials and body-worn camera footage.

New Orleans, Louisiana, this 1st day of March, 2024.



BARRY W. ASHE
UNITED STATES DISTRICT JUDGE